DOMO, APPELLANT, *v.* MCCARTHY, TRUSTEE, ET AL., APPELLEES.

[Cite as *Domo v. McCarthy* (1993), 66 Ohio St.3d 312.]

(No. 92–372—Submitted February 16, 1993—Decided June 2, 1993.)

*Ulmer & Berne* and *Marvin L. Karp,* for appellant.

*Cooper, Straub, Walinski & Cramer, Cary Rodman Cooper* and *Margaret J. Lockhart,* for appellees Susan S. Madison, individually and as executrix of the estate of Mary H. Stouffer, Jack B. Madison, Sarah H. Drew, John Drew, and Sarah and John Drew as parents of Mary C. Drew.

*Nathan & Roberts* and *H. Buswell Roberts,* for appellees James V. Stouffer, Jr., Vicki J. Stouffer, James V. Stouffer III, and David B. Stouffer.

*Fuller & Henry, Mary Ann Whipple* and *Lance M. Keiffer,* for appellee John F. McCarthy.

---

DOUGLAS, J.  This appeal requires us to analyze certain provisions of the James V. Stouffer Trust and the Mary H. Stouffer Trust.  Specifically, we are asked to construe and give effect to certain spendthrift provisions and determine what interests under the trusts, if any, appellant is entitled to reach as a creditor of James, Jr.

## I

We are mindful that one of the fundamental tenets for the construction of a will or trust is to ascertain, within the bounds of the law, the intent of the testator, grantor or settlor.  See *Townsend's Executors v. Townsend* (1874), 25 Ohio St. 477; *Martin v. Martin* (1978), 54 Ohio St.2d 101, 8 O.O.3d 106, 374 N.E.2d 1384;  *Ohio Citizens Bank v. Mills* (1989), 45 Ohio St.3d 153, 543 N.E.2d 1206; and *Scott v. Bank One Trust Co., N.A.* (1991), 62 Ohio St.3d 39, 577 N.E.2d 1077.  Generally, when the language of the instrument is not ambiguous, intent can be ascertained from the express terms of the trust itself.  See Restatement of the Law 2d, Trusts (1959) 13, Section 4;  I Scott, Law of Trusts (4 Ed. Fratcher Ed.1987) 53–54, Section 4;  IIA Scott, Law of Trusts, *supra,* at 253–261, Section 164.1;  and Bogert, Trusts & Trustees (2 Ed.Rev.1984) 463, Section 45.

Recently, in *Scott, supra,* we overruled *Sherrow v. Brookover* (1963), 174 Ohio St. 310, 22 O.O.2d 373, 189 N.E.2d 90, and put to rest any uncertainty as to whether spendthrift trusts were enforceable in Ohio.  In *Scott,* we balanced competing policies favoring and disfavoring spendthrift trusts, and concluded that " * * * enforcing a spendthrift provision 'takes nothing from the prior or subsequent creditors of the beneficiary to which they previously had the right to look for payment * * *.' "  (Citation omitted.)  *Scott, supra,* 62 Ohio St.3d at 47, 577 N.E.2d at 1083.  We further emphasized that a beneficiary owns no greater interest in the trust property than the settlor has given him and, "[i]n

the case of a spendthrift trust, the settlor has not given the beneficiary an alienable interest." *Id.* at 48, 577 N.E.2d at 1084. We also addressed the creditor's bill statute in Ohio, R.C. 2333.01, and further concluded that this statute was not applicable because it speaks to only those interests which the judgment debtor *has*, and, in the case of a spendthrift trust, the beneficiary does not *have* any interest in the trust because the settlor did not give the beneficiary an interest. *Id.* at 49, 577 N.E.2d at 1084.

Keeping these foregoing principles in mind, we turn our attention to the trusts in question.

## II

### James V. Stouffer Trust

The James V. Stouffer Trust is a comprehensive instrument, creating a "Marital Trust" and a "Family Trust." In general terms, the trust was created to provide for the settlor's wife, Mary H. Stouffer, and the settlor's lineal descendants. Further, during Mary's life, the trustees were empowered to pay net income and principal to Mary from both the marital trust and the family trust, and net income from the family trust to the settlor's lineal descendants "as they deem proper." Upon Mary's death, the trustees were instructed to divide the remaining trust assets, from the marital trust and/or the family trust, equally among the settlor's three children, including James, Jr.

Moreover, the trust contains a spendthrift provision.[1] Paragraph eight of Article II of the trust provides, in relevant part, that:

"8. *Protective Provision.* No interest of my wife or of any lineal descendant of mine in income or principal shall be anticipated, encumbered or assigned. No such interest shall be subject to claims of such person's creditors, spouse or divorced spouse or others. If any part or all of any such interest, but for this provision, would vest in or be enjoyed by any other individual or entity, other than by disclaimer or release, *such interest shall*

---

1. Because this provision contains a forfeiture clause and also a discretionary clause, some authorities have classified a provision such as this as a "protective trust." See Haskell, Preface to the Law of Trusts (1975), Section 5, at 39; and Bogert, Trusts & Trustees (2 Ed.Rev.1979) 543–545, Section 230. See, also, *Jones v. Schneider* (1964), 3 Ohio App.2d 325, 32 O.O.2d 431, 210 N.E.2d 399. It appears that this type of trust has found some support in the United States. IIA Scott, Law of Trusts (4 Ed. Fratcher Ed.1987) 80, Section 150. However, " * * * [i]n states in which spendthrift trusts are permitted * * * it is unnecessary to resort to a device like this * * *. In other words, in states in which spendthrift trusts are permitted it is unnecessary to provide for a forfeiture of the beneficiary's interest and the substitution of a discretionary trust, but the settlor can impose a direct restraint on the alienation, voluntary or involuntary, of the beneficiary's interest." *Id.* at 80–81, Section 150.

*terminate.* Thereafter the Trustees from time to time may, in their discretion, but shall not be obligated to, pay to or expend for such person, any dependent of his or any other lineal descendant of mine, such amounts of the income or principal comprising such interest as the Trustees in their discretion deem proper * * *. Upon the death of such person all such income or principal, if any, then held by the Trustees shall be treated as provided in this agreement for disposition upon his death. * * * " (Emphasis added.)

The court of appeals, interpreting the spendthrift provision, held that appellant was prevented from attaching James, Jr.'s interest in either income or principal under his father's trust. The court of appeals essentially determined that by filing his 1988 creditor's bill, appellant caused James, Jr.'s interest in the trust to terminate, triggering the creation of a discretionary trust in favor of James, Jr., James, Jr.'s dependents and the settlor's descendants, which was to last for the life of James, Jr. Therefore, concluded the court of appeals, "the discretionary nature of the substituted trust prevents creditors, including Domo, from attaching James Stouffer, Jr.'s interest in the James Stouffer, Sr. trust."

Appellant basically contends that the court of appeals erred by placing special significance on the spendthrift provision, and that his original creditor's bill filed in 1988 is not dispositive of the issue. Rather, appellant focuses on Mary H. Stouffer's death. Appellant argues that upon Mary's death the entire trust terminated, which necessarily included the spendthrift provision contained in the trust. Thus, because the spendthrift clause was no longer applicable upon Mary's death, appellant claims he is entitled to attach James, Jr.'s one-third interest in the trust.

In support of his position, appellant cites *Martin, supra; Brent v. Maryland Cent. Collection Unit* (1988), 311 Md. 626, 537 A.2d 227; and *First Natl. Bank of Omaha v. First Cadco Corp.* (1973), 189 Neb. 734, 205 N.W.2d 115. A common thread that appears to run through these cases is that a spendthrift provision ceases to be effective upon the termination or expiration of the trust.

We agree with the proposition that a spendthrift provision ceases to be effective upon the termination or expiration of a trust. However, we disagree with appellant that his filing of a creditor's bill has no bearing on the situation. Further, we are at variance with appellant that no significance should be given to the spendthrift language promulgated by the settlor.

The situation here is similar in many ways to that found in *Scott, supra.* Our decision in *Scott* concerned whether a debtor's interest in a trust created by his mother could be reached by a bankruptcy trustee. Though the trust provision at issue in *Scott* did not expressly restrain the alienability of the

beneficiary's interest in the trust property, it did establish that upon the settlor's death, the trustee was to distribute the trust property to the settlor's son unless the son was, among other things, insolvent, had filed a petition in bankruptcy, or would not personally enjoy the property, in which case the trust was to become a purely discretionary trust. Upon the settlor's death, the trustee concluded that the son was insolvent and would not enjoy the trust property. The trustee then made discretionary distributions to the beneficiary.

In *Scott*, the settlor's intent was unequivocal. The settlor intended that *her* estate was to be enjoyed by her son, and that *her* (settlor's) assets were not to end up in the hands of the son's creditors. An important maxim to be derived from *Scott* is that a settlor has, under most circumstances, unfettered discretion to dispose of her or his assets as the settlor so chooses. *Scott*, 62 Ohio St.3d at 47, 577 N.E.2d at 1083.

In the situation here, it is clear that the settlor intended that *his* estate was to be enjoyed and utilized by certain beneficiaries. The settlor imposed a restraint on the voluntary and involuntary transfer of the beneficiaries' interests in both income and principal. Such a restraint is valid. See Restatement of Trusts 2d, *supra*, at 311, Section 152(1), and at 318, Section 153(1). Unambiguously, the settlor prescribed that "[n]o such interest [income or principal] shall be subject to claims of such person's creditors * * *," and if "any such interest" would vest or *would be enjoyed* by any individual or entity, "such interest shall terminate." The settlor further provided that if any of these conditions existed, the trust was to become a purely discretionary trust for the life of the beneficiary.

Upon a reading of the entire trust, and paying particular attention to the spendthrift language of the trust, we are convinced that the court of appeals reached the correct conclusion. It is obvious to us that when appellant filed his original creditor's bill in 1988, he triggered the spendthrift provision, converting James, Jr.'s interest from an absolute right in income and principal to an interest in which the trustee must administer the trust as a purely discretionary trust for James, Jr., James, Jr.'s dependents and the settlor's lineal descendants. As such, the newly created discretionary trust cannot be reached by appellant as a creditor of James, Jr. *Scott*, *supra*, at 45, 577 N.E.2d at 1081–1082. See, also, Restatement of Trusts 2d, *supra*, at 323, Section 155(1); and IIA Scott, Law of Trusts, *supra*, 152, Section 155.

Appellant also alleges that the conclusion reached by the court of appeals could lead to an illogical result. Appellant states that the court of appeals' interpretation of the spendthrift provision could deprive a beneficiary of an interest in a trust no matter how small the creditor's bill that is filed. It may

be true that under circumstances such as here, a creditor's bill in the amount of $100 or even smaller would have triggered paragraph eight of the trust. However, our role is not to question a settlor's intentions. Rather, we hold that a court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent. We further hold that in Ohio, a spendthrift provision of a trust, when applicable, will be given full force and effect.

Finally, we also conclude that paragraph nine of Article II of the trust acts as a bar to appellant's claims. This paragraph provides:

"9. *Limitations on Powers of Children as Trustees.* Any child of mine who is a Trustee is an 'interested Trustee'. No interested Trustee may make any payment of income or principal of the Family Trust to himself, to another interested Trustee, to any minor child of his or to any minor child of another interested Trustee. However, such payments may be made by a Trustee who is not an interested Trustee."

At the time of this appeal, James, Jr. was an "interested trustee." We find that James, Jr. was the *only* designated trustee of the James V. Stouffer Trust. James, Jr., as an interested trustee, is prohibited from making any payment of income or principal to himself. It is apparent that the settlor intended that as long as James, Jr. remains a trustee he will never attain any interest in the trust. Therefore, appellant, as a creditor of James, Jr., has no greater rights to the trust assets than that which James, Jr. has himself.

### III

### Mary H. Stouffer Trust

This trust, like the James V. Stouffer Trust, is a somewhat complex agreement. Paragraph one of this trust provides that the trustees shall establish and maintain separate "Trust Funds" for the benefit of each of Mary's children and others. The agreement provides, however, that the separate trust funds for each beneficiary shall be administered by the trustee as an undivided whole.

Paragraph six of the agreement provides for distribution of the trust income and principal. This paragraph also concerns distribution of the trust corpus at the termination of the trust. Specifically, subparagraph (a) of paragraph six provides that the trustee must "during the continuance of each Trust Fund," pay to the beneficiaries "the entire net income of such Trust Fund, not less frequently than annually * * *." In addition, the trustee is granted power to distribute such amounts of principal as the trustee deems necessary for each beneficiary's "care, comfort, support, health, maintenance,

and general welfare * * *." Further, subparagraph (b) of paragraph six provides that when a beneficiary reaches the age of thirty-five, the trust fund held for that beneficiary is to terminate, and the beneficiary is to be paid his or her share of the trust principal and undistributed income.[2]

The trust also contains a spendthrift provision. Paragraph eight of the trust provides, in relevant part, that:

"8. *Except to the extent otherwise provided by paragraph 6 hereof,* no title to the principal of any Trust Fund shall vest in any Beneficiary *until actual payment* thereof is made to such Beneficiary by the Trustee *in accordance with the provisions hereof.* No Beneficiary shall have right or power to transfer, assign, anticipate or encumber his or her interest in the principal of Trust Fund held for his or her benefit *prior to the actual receipt thereof by him or her. Said Trust Fund* shall not be liable for such Beneficiary's debts, contracts, or engagements or be subject to any legal process, bankruptcy proceedings or the interference or control of creditors, spouses or divorced spouses, children, or others * * *." (Emphasis added.)

Appellant's point of concentration is on paragraph six of the trust. Appellant contends that when James, Jr. reaches the age of thirty-five, he is entitled to a one-third share of the trust principal. Therefore, urges appellant, James, Jr. has an "equitable future interest" in the trust principal subject to a present court order which is enforceable if and when James, Jr.'s future interest vests. In support of his position, appellant relies on *Martin, supra.* We disagree.

In *Martin,* a father established a trust for the benefit of his children. The trustees were directed to distribute income and principal as was necessary for the "comfort, care, support and education" of each beneficiary. *Martin, supra,* 54 Ohio St.2d at 103, 8 O.O.3d at 107, 374 N.E.2d at 1386. The trust set forth a termination date, being twenty-five years after it was created, at which time each beneficiary would receive all principal and undistributed income. The trust further prohibited the voluntary and involuntary alienation of the beneficiaries' interests in the trust. We refused to allow a former spouse of one of the beneficiaries to attach the beneficiary's interest in the trust to satisfy an alimony award and held, in paragraph two of the syllabus, that: "In the absence of language in a trust instrument showing an intention on the part of the settlor that trust income and principal payable to the trust beneficiary for support be used for the payment of alimony, such income and principal is not reachable by a judgment creditor for that purpose." We then cautioned that because of the spendthrift provision within the trust, our

---

2. It appears that James, Jr. has not yet reached the age of thirty-five.

holding applied only to disbursements of income and principal "during the life of the trust." *Id.* at 111, 8 O.O.3d at 112, 374 N.E.2d at 1391.

As a final matter, we addressed what interest the beneficiary/debtor had in his father's trust. We concluded that:

"The beneficiary's right to receive distribution of the principal and undistributed income upon termination of the trust is an equitable future interest. 'A future interest, whether contingent or executory, is alienable.' *Moore v. Foresman* [1962], 172 Ohio St. 559 [18 O.O.2d 123], 179 N.E.2d 349; R.C. 2131.04. Thus, the interest of the beneficiary upon termination of the trust can be subjected to a court order requiring the trustees to apply to appellee's judgment 'any property, money or disbursements from corpus or income which become payable to or for the benefit of defendant Fred J. Martin * * * until the same is satisfied in full,' as ordered by the Court of Appeals." *Id.* at 112, 8 O.O.3d at 112, 374 N.E.2d at 1391.

There are notable distinctions between *Martin* and the situation before this court. Most importantly, the settlor in *Martin* intended that the trust was to terminate precisely twenty-five years after the creation of the trust and the trustees were commanded to make distributions to the beneficiaries at that time. Further, the trustees were authorized to protect the trust from alienation or attachment only during the life of the trust.

In the present case, we are confronted with an entirely different trust. Here, the settlor set forth two conditions that must be met before James, Jr. is able to attain a vested interest in his mother's trust. The settlor expressed that James, Jr. must reach the age of thirty-five *and* the trust principal does not vest in James, Jr. "prior to the actual receipt thereof by him" from the trustee. It is arguable that in the absence of the language, "until actual payment" and "prior to the actual receipt thereof by him" as used in the spendthrift provision of the trust, *Martin* may be applicable. However, we believe that given the explicit payment and receipt language used by the settlor, it would be incorrect to conclude that James, Jr. has an "equitable future interest" in his mother's trust property. By its very terms, the trust shows an intention on the part of the settlor that James, Jr. is prohibited from attaining a vested interest in the trust until McCarthy actually transfers the principal to James, Jr. Thus, *Martin*, being factually inapposite to this situation, does not apply.[3]

---

3. We believe that *Martin v. Martin* (1978), 54 Ohio St.2d 101, 8 O.O.3d 106, 374 N.E.2d 1384, should be limited to its facts. In *Martin*, former Chief Justice William O'Neill cited and relied upon *Moore v. Foresman* (1962), 172 Ohio St. 559, 18 O.O.2d 123, 179 N.E.2d 349, for the proposition that a future interest is alienable. It is interesting to note that Justice O'Neill authored both opinions. However, the trust in *Moore* did not contain a spendthrift provision.

In the case at bar, the court of appeals held that the spendthrift clause in the Mary H. Stouffer Trust prevented appellant from attaching James, Jr.'s future interest in the trust principal. In reaching its decision, the court of appeals cited Bogert, Trusts and Trustees, *supra*, at 393–394, Section 222:

"It would seem that to the extent spendthrift trusts are valid their protection should extend to the right of the beneficiary to receive income or principal from the trustee until it is *actually paid or delivered into the beneficiary's hands, and that trust income which is in the hands of the trustee awaiting payment should be affected by the restraint, whether the time for its payment has or has not passed.*" (Emphasis added.)

We agree with the conclusion reached by the court of appeals.[4] The settlor's intent can be gleaned from the clear terms of the trust itself. Specifically, in paragraph eight of the trust, the settlor clearly stated that "no title to the principal * * * shall vest in any Beneficiary *until actual payment* * * * is made * * * by the Trustee in accordance with the *provisions hereof.*" (Emphasis added.) Further, the settlor clearly specified that "[s]aid Trust Fund shall not be liable for such Beneficiary's debts * * * or be subject to any legal process * * * or control of creditors * * *." Moreover, the trust provides that the beneficiaries cannot transfer or encumber their interests in the principal of the trust *"held for his or her benefit prior to the actual receipt thereof* * * *."* (Emphasis added.) Based on the foregoing language, it is obvious that the settlor did not want *her* assets to end up in the hands of her children's creditors. Further, the settlor sought to protect *her* estate from the beneficiaries' creditors unless and until the principal is actually paid or delivered into the beneficiaries' hands.

Accordingly, given the language employed by the settlor here, we hold that the voluntary and involuntary restraint or alienation of the right of James, Jr. to receive his mother's assets is effective until the principal is *actually transferred* by McCarthy to James, Jr. Hence, James, Jr. has no attachable interest while the principal remains in McCarthy's care. "The beneficiary owns no greater interest in the trust property than the settlor has given him.

---

Thus, it is safe to say that *Martin* was the result of application of the general rule that all future interests, contingent or otherwise, are alienable. It goes without saying that applying a general rule in all situations can produce an incorrect result.

4. The court of appeals also concluded that the spendthrift provision in the trust was not applicable with respect to James, Jr.'s interest in the trust income. We raise a question concerning this conclusion. The third sentence of paragraph eight of the trust references "Said Trust Fund." This provision seems to place the beneficiary's *entire* interest in the trust fund beyond the reach of creditors. It is arguable that this provision includes both income and principal. However, appellees have not appealed this issue. Therefore, with regard to this trust, the only issue properly before us concerns the alienability of the trust principal.

In the case of a spendthrift trust, the settlor has not given the beneficiary an alienable interest." *Scott*, 62 Ohio St.3d at 48, 577 N.E.2d at 1084.

We are aware that a split of authority exists with respect to the alienability of a future equitable interest under a trust. See IIA Scott, Law of Trusts, *supra*, 132–134, Section 153. See, also, *Brent, supra*, 311 Md. at 630–639, 537 A.2d at 230–233. However, we believe, as have a significant number of other courts, in similar situations, that a restraint on alienation of the right to receive the principal from a trust is effective until the principal is actually transferred by the trustee to the beneficiary. Accord IIA Scott, Law of Trusts, *supra*, 133–134, Section 153, fns. 6 and 8. See, also, *Hoffman Chevrolet, Inc. v. Washington Cty. Natl. Savings Bank* (1983), 297 Md. 691, 467 A.2d 758, and *In re Trust Created Under Agreement With McLaughlin* (Minn.1985), 361 N.W.2d 43.

## IV

The judgment of the court of appeals is affirmed. The spendthrift provisions in both trusts should be afforded full force and effect.

*Judgment affirmed.*

A.W. SWEENEY, Acting C.J., FORD, F.E. SWEENEY and PFEIFER, JJ., concur.

PETREE and WRIGHT, JJ., dissent in part and concur in part.

CHARLES R. PETREE, J., of the Tenth Appellate District, sitting for MOYER, C.J.

DONALD R. FORD, J., of the Eleventh Appellate District, sitting for RESNICK, J.

WRIGHT, J., dissenting in part and concurring in part. While I am troubled with the majority's analysis of the James V. Stouffer Trust, I agree the result is correct under our decision in *Scott v. Bank One Trust Co., N.A.* (1991), 62 Ohio St.3d 39, 577 N.E.2d 1077.[5] Moreover, the authorities on trusts indicate

---

5. Specifically, I am concerned about the very real possibility that a beneficiary could lose his or her entire expectancy as a result of the filing of *any* creditor's bill—no matter how insignificant. For example, suppose a creditor gets a $5 default judgment against a beneficiary of a trust. The creditor then files a creditor's bill against the beneficiary's interest in the trust property. If the trust has a forfeiture provision similar to the one in the James V. Stouffer Trust, the spendthrift trust terminates and the trust becomes a purely discretionary trust. Thus, the beneficiary's vested interests and equitable interests, no matter how large, can be terminated by any creditor's bill, no matter how small. Even more disturbing is that a simple cognovit judgment by a creditor against the beneficiary could lead to the same untoward result. I cannot believe that most settlors would intend such an absurd scenario.

But, as we must gauge the settlor's intent by the words of the trust instrument alone, we must give the words of a broad forfeiture provision the effect they call for. For settlors who do not intend such a result, however, there are ways to avoid it while retaining spendthrift

that if spendthrift trusts are valid, then the sort of forfeiture provisions at issue in this case are also valid. See, *e.g.*, Restatement of the Law 2d, Trusts (1959), Section 150. I also believe that the majority correctly states the general principles of law to be followed when considering trust cases. Accordingly, I concur in the syllabus and in Parts I and II of the majority opinion.

I disagree with the majority's treatment of the Mary H. Stouffer Trust in Part III of its opinion. As a general rule, future interests, whether contingent or executory, are alienable and may be attached by creditors. See R.C. 2131.04; *Martin v. Martin* (1978), 54 Ohio St.2d 101, 8 O.O.3d 106, 374 N.E.2d 1384; *Moore v. Foresman* (1962), 172 Ohio St. 559, 18 O.O.2d 123, 179 N.E.2d 349; IIA Scott, Law of Trusts (4 Ed. Fratcher Ed.1987) 130–132, Section 153. Through the use of a spendthrift clause, however, a trust settlor may protect a beneficiary's future interest in the trust principal. IIA Scott, Law of Trusts, *supra*, at 134–136. A future interest can be protected from voluntary transfer or alienation by the beneficiary and/or from involuntary attachment or alienation by a creditor. Bogert, Trusts & Trustees (2 Ed.Rev.1984) 397–398, Section 222; Restatement of Trusts 2d, *supra*, at 311, Section 152(1). The court's function, of course, is to determine the extent to which the settlor intended to protect the trust property.

The majority errs by treating Mary Stouffer's intent regarding voluntary alienation of the principal by the beneficiaries exactly the same as her intent regarding involuntary alienation of the principal by creditors. The terms of the spendthrift clause in this trust plainly indicate that voluntary and involuntary alienation were intended to be treated differently. Paragraph eight of the trust instrument, the spendthrift clause, contains five provisions:

"[1] Except to the extent otherwise provided by paragraph 6 hereof, no title to the principal of any Trust Fund shall vest in any Beneficiary until actual payment thereof is made to such Beneficiary by the Trustee in accordance with the provisions hereof. [2] No *Beneficiary* shall have the right or power to transfer, assign, anticipate or encumber his or her interest in the principal of Trust Fund held for his or her benefit prior to the actual receipt thereof by him or her. [3] Said Trust Fund shall not be liable for such Beneficiary's *debts*, contracts, or engagements or be subject to any legal process, bankrupt-

protection. For example, the trust instrument could give a beneficiary, upon the filing of a creditor's bill, the option to waive his or her expectancy and convert it to a life estate. Or, the settlor could provide that the forfeiture provision is triggered only when the creditor's bill seeks to attach a certain substantial percentage of the beneficiary's interest. In short, settlors may wish to avoid a situation in which a small debt causes the beneficiary to forfeit a large interest to the unfettered discretion of the trustee, but they must do so explicitly.

cy proceedings or the interference or control of *creditors,* spouses or divorced spouses, children, or others. [4] No *Beneficiary* shall be permitted to appoint any agent or attorney-in-fact to collect or receive the principal of such Trust Fund or any part thereof unless permission to do so shall be specifically granted by the Trustee in writing. [5] The Trustee, in the absence of such written permission, shall not in any manner recognize such appointment, transfer, assignment, or encumbrance, of the principal from such Trust Fund." (Emphasis and enumeration added.)

The first provision protects title to the trust property from alienation to the extent specified in the remainder of paragraph eight and in paragraph six of the instrument, which provides for the distribution of trust income and principal by the trustee. The second, fourth, and fifth provisions restrain *the beneficiaries* from *voluntarily* alienating their interests in the trust principal. The second provision prohibits voluntary alienation until a beneficiary actually receives trust property. It specifically provides that a beneficiary shall not have the right or power to alienate his or her interest in the trust principal. The fourth provision further prohibits a beneficiary from appointing another person to receive distributions of trust principal unless the trustee gives written permission to do so. The fifth provision prevents the trustee from distributing trust principal to anyone but the beneficiary in the absence of the written permission required by provision four.

It is the third provision of the spendthrift clause that is relevant in this case. This provision focuses on involuntary alienation of trust property by, among others, creditors of the beneficiary. It provides that the "Trust Fund" cannot be "liable" to any creditors. In stark contrast to the second provision, the third provision does *not* prohibit the beneficiary's "interest in the principal of [the] Trust Fund" from being transferred, assigned, anticipated, or encumbered by a creditor. Moreover, while the second, fourth, and fifth provisions of the spendthrift clause protect the trust "principal" from alienation by the beneficiary, the third provision protects the "Trust Fund" from liability for debts owed by the beneficiary. One must assume that there is a reason the settlor spoke in terms of the "Trust Fund" in one provision and in terms of an interest in the "principal" in the others.

These significant distinctions demonstrate that the settlor intended that voluntary and involuntary alienation of principal should be treated differently. The beneficiaries are clearly prohibited from voluntarily alienating their interests in the trust principal. In contrast, nothing in the language of the trust instrument prevents creditors of the beneficiaries from attaching future interests in the trust principal. What creditors may *not* do is interfere in any

way with the trust fund while it is in existence—the "Trust Fund," states the third provision, "shall not be liable for such Beneficiary's debts * * *."

For each beneficiary, the trust fund ceases to exist, by its own terms, when that beneficiary turns age thirty-five. Paragraph 6(b) of the instrument provides in part: "When any Beneficiary attains the age of thirty-five (35) years or sooner dies, this trust shall terminate with respect to the Trust Fund held for his or her benefit and the entire then remaining principal of said Trust Fund and any theretofore undistributed net income shall be distributed and delivered, *absolutely and free of trust*, to such Beneficiary, if then surviving * * *." (Emphasis added.)

Thus, a creditor who attaches a beneficiary's contingent future interest in the trust principal does not interfere with the trust fund. If the beneficiary does not attain age thirty-five his absolute interest in his portion of the trust principal never vests and the creditor gets nothing. If, on the other hand, the beneficiary lives to age thirty-five, the trust fund terminates and the principal vests in the beneficiary. At that time the creditor's interest would ripen and he or she could then attach the principal that would be transferred to the beneficiary by the trustee. The creditor, however, would not be interfering with the trust fund because the fund would have terminated.[6]

The majority simply ignores the clear distinction drawn in the spendthrift clause between voluntary and involuntary alienation. It treats the two different restraints on alienation in precisely the same fashion despite the fact that the settlor intentionally used different words to describe them. The majority cites portions of the first, second, and third provisions of the spendthrift clause in support of its proposition that the settlor intended to restrain alienation of any interest in her estate prior to actual distribution. The first provision, however, speaks in terms of the *"title* to the principal." (Emphasis added.) The creditor in this case cannot seek to attach the beneficiary's present title to the principal because the beneficiary does not yet have title; he merely seeks to attach the beneficiary's future interest in the principal. A contingent future interest and title are two different things. A person has "title" to property *only* when he or she holds vested rights to that property. See Restatement of Trusts 2d, *supra,* Section 2, Comment *d.*

---

6. The way in which creditors are treated under the spendthrift provision in the Mary H. Stouffer Trust is very different from their treatment in the James V. Stouffer Trust. The spendthrift provision in the James V. Stouffer Trust broadly protects trust income and principal from anticipation, encumbrance, or assignment. "No such interest," the clause reads, "shall be subject to claims of such person's creditors, spouse or divorced spouse." As seen above, the Mary H. Stouffer Trust uses equally broad language to restrain *voluntary alienation,* but uses much narrower language to restrain *involuntary alienation* of interest.

James Stouffer, Jr.'s interest in the trust principal is a contingent future interest—he does not gain title to the trust principal until he reaches the age of thirty-five.

As stated, the majority also cites portions of the second and third provisions of the spendthrift clause. Any reliance on the second provision is improper because it deals only with voluntary alienation by the beneficiary. The majority's reliance on the third provision of the clause is tainted by its apparent misunderstanding of the interest the creditor seeks to obtain. The creditor, again, does not intend to interfere with or attach any part of the "Trust Fund"; he seeks only to attach the debtor/beneficiary's future interest in that portion of the trust principal the beneficiary will obtain after the trust fund terminates. The creditor simply wants to be first in line when James Stouffer, Jr. receives his portion of the trust principal at age thirty-five.[7]

I agree with the majority that *Martin v. Martin, supra,* is factually distinguishable from the present case. I do not agree, however, with the implication that the rule on which the decision in *Martin* was based is somehow limited only to the facts of *Martin.* The rule is, in fact, set by R.C. 2131.04.[8]

But clearly, as the majority aptly observes, if a settlor intends to restrain the involuntary alienation of a beneficiary's interest in the principal she can do so. See *Martin, supra,* at 112, 8 O.O.3d at 112, 374 N.E.2d at 1391; Restatement of Trusts 2d, *supra,* at 318, Section 153(1); Bogert, Trusts & Trustees, *supra,* Section 222. Thus the settlor in this case had the ability to restrain the involuntary attachment of James, Jr.'s future interest in the trust principal. But, she did not do so. She did effectively restrain any voluntary alienation of the beneficiaries' interests and she did keep the trust fund itself from being subject to any liability incurred by any beneficiary. She did not, however, as James V. Stouffer, Sr. so forcefully did, restrain the involuntary alienation of the beneficiaries' future interests in the trust principal.

Accordingly, I would reverse the court of appeals and hold that James, Jr.'s contingent future interest in the trust principal of the Mary H. Stouffer Trust

---

7. Unlike the James V. Stouffer Trust, the Mary H. Stouffer Trust does not contain a provision that converts the spendthrift trust into a discretionary trust if a creditor seeks to attach trust property. As the majority correctly observes, if and when James, Jr. turns age thirty-five he is entitled to his portion of the trust principal pursuant to paragraph six of the instrument. Domo's attempt to attach James, Jr.'s future interest does not trigger any change in the trustee's obligation to distribute the trust principal at the appropriate time.

8. R.C. 2131.04 provides:
   "Remainders, whether vested or contingent, executory interests, and other expectant estates are descendible, devisable and alienable in the same manner as estates in possession."

was not subject to a restraint on involuntary alienation. The portion of the trial court's order which gave Domo rights to James, Jr.'s future interest in the trust principal upon termination of the trust fund was proper and should have been affirmed.[9]

PETREE, J., concurs in the foregoing opinion.

---

9. Paragraph four of the trial court's judgment entry ordered:

"Any property, money or disbursements from corpus or income which become payable to or for the benefit of defendant James V. Stouffer, Jr. under the Mary Stouffer Trust, whether during the life of said Trust or upon termination of the said Trust with respect to James V. Stouffer, Jr.'s interest therein, be paid or delivered to plaintiff John M. Domo, to be applied to the payment of plaintiff John M. Domo's judgment against James V. Stouffer, Jr. until the same is satisfied in full."

To the extent that this order gave Domo rights to disbursement of trust property prior to the termination of the trust, I believe that it was incorrect and was properly reversed.

That said, I do not mean to imply that property *actually transferred* to James, Jr. cannot be attached by Domo. Once trust property is disbursed to the beneficiaries it cannot be protected from creditors by a spendthrift provision.