DECISION.
Plaintiff-appellant, Elizabeth Heekin Harris ("Harris"), appeals the partial summary judgment granted by the Probate Division of Hamilton County Court of Common Pleas in favor of defendants-appellees,[1] Brian E. Heekin and Albert E. Heekin, III ("Heekin defendants"), on Harris's claim that she was entitled to one-half of the income earned by a trust from January 1, 1997, to September 5, 1997. For the following reasons, we hold that the trial court properly interpreted the terms of the trust and, accordingly, affirm its judgment.
In 1954, Albert E. Heekin, the settlor, created six similar trusts, two each for the benefit of his three sons, George, Charles and Albert Jr. At issue here is the Albert E. Heekin Trust Agreement No. 6 ("Trust Agreement"). Article FIRST of the Trust Agreement provides that the principal and income is to be paid to or applied for the benefit of Charles or his issue during Charles's lifetime. Furthermore, any undistributed income at the end of a year is to be added to the principal. The record indicates that there was no income distributed to Charles in 1997. Section Three of Article SECOND of the Trust Agreement, which governs the distribution of the trust assets if Charles dies without issue, is pertinent to this appeal. The relevant provision follows:
 Upon the death of the Grantor's said son [Charles], if no issue of the Grantor's said son be then living, the then remaining principal and undistributed income shall be divided into two equal parts, one of which shall be designated Part A and the other of which shall be designated Part B; the net income from Part A, may, until the death of the Grantor's son, George E. Heekin, be paid to or applied for the benefit of any one or more of the group consisting of the Grantor's son, George E. Heekin, and the issue living from time to time of the Grantor's son, George E. Heekin; upon the death of said George E. Heekin, the undistributed income from Part A shall be paid to the issue then living of said George E. Heekin, per stirpes, and free and clear of all trusts * * *.
 Albert Jr. died on February 1, 1971, survived by his only children, the Heekin defendants. Charles died on September 5, 1997, without issue, and George died shortly thereafter on October 20, 1997, survived by his only child, Elizabeth Heekin Harris.
Harris contends here, as she did in the trial court, that Part A undistributed income includes not only the undistributed income generated from Part A from September 5, 1997, to October 20, 1997, the date of George Heekin's death, but also one-half of the undistributed income earned on the trust principal from January 1, 1997, to September 5, 1997. The Heekin defendants, individual trustees under the Trust Agreement, claim that Harris is not entitled to any undistributed income prior to September 5, 1997, because the trust indicates that she is only entitled to income generated from Part A, which did not even come into existence until the date of Charles's death, September 5, 1997. Both parties moved below for partial summary judgment,[2] and the trial court, finding that the settlor's intent was clear, granted the Heekin defendants' motion and denied Harris's. In support of her timely appeal, Harris now advances a single assignment of error, contending that the trial court improperly granted summary judgment in favor of the Heekin defendants and improperly denied her motion for summary judgment. We are unpersuaded.
Pursuant to Civ.R. 56(C), summary judgment is appropriate when there remains no genuine issue of material fact, and when, after construing the evidence in a light most favorable to the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.[3] This court conducts a de novo review to determine if summary judgment has been properly granted.[4]
To resolve the present dispute, it is important to note that "[t]he fundamental rule in the construction of a trust is to ascertain the intent of the settlor."[5] Intent may be determined from the express, unambiguous language of a trust instrument.[6] We hold that the settlor's intent in this case is clearly expressed by the language of the trust.
As quoted above, Section Three provides that if Charles dies without issue, as he eventually did, the remaining principal and undistributed income shall be divided into two equal parts, designated Part A and Part B. Harris disputes the trial court's finding that Section Three requires the undistributed income from the trust to be added to the principal amount at Charles's death, and then divided in half so that one half may fund Part A and the other half may fund Part B. Instead, she contends that one-half of the undistributed income and one-half of the principal existing on September 5, 1997, became Part A undistributed income and principal upon Charles's death, entitling her to the Part A undistributed income. Essentially, Harris is arguing that the "undistributed income" retained its character upon Charles's death and, therefore, was not made a part of the corpus of Part A. We disagree.
Harris relies on the instruction in Article FIRST, which directs that all undistributed income be added to the principal at the end of each year, to support her argument that the undistributed income did not lose its character as income at Charles's death, since he passed away before the end of the calendar year. Thus, she concludes that she is entitled to one-half the of undistributed income earned prior to September 5, 1997, the date of Charles's death. But Article FIRST dictates how the trust assets were to be distributed while Charles was living, whereas Section Three became applicable upon Charles's death without issue. Section Three does not contain an instruction to add the undistributed income to the principal at the end of the year in which Charles died, such as the one calling for addition of undistributed income to principal at the end of the year in Article FIRST or the ones in Sections One and Two of Article SECOND that would have governed the distribution of the trust assets if Charles had died with issue. Instead, Section Three directs that the remaining principal and undistributed income be divided to form two equal parts. Additionally, we consider it more significant that the settlor did not include an instruction segregating income from principal when Part A was created. Thus, it is clear that the settlor intended, upon Charles's death, that the remaining principal and undistributed income be divided into two equal parts, with one part forming the corpus of Part A and the other forming the corpus of Part B.
The settlor's plain language makes clear his intent regarding what monies the income beneficiaries, George Heekin and his issue, Harris, were to receive when he directed that George and his issue receive "net income from Part A," and that, upon George's death, George's issue, Harris, receive all "undistributed income from Part A." The settlor did not intend for George or his issue to receive any undistributed income from the trust while Charles was living, as that money was for the benefit of Charles and his issue. George and his issue were only to receive income "from Part A." In order for the undistributed income of Part A to be distributed to George and his issue, Part A had to have been created and earning income. We agree with the trial court that it was this generated income from Part A that the settlor intended to be paid to these beneficiaries. Accordingly, the assignment of error is overruled, and the judgment of the probate court is affirmed.
Doan and Sundermann, JJ., concur.
[1] Defendant-appellee PNC Bank, N.A. has indicated in its brief that PNC does not take a position with respect to this appeal and that PNC is prepared to follow the directions of this court.
[2] The parties moved for summary judgment on count one of Harris's complaint, which sought a declaratory judgment that Harris was entitled to one-half of the undistributed income from January 1, 1997, to September 5, 1997. The second count sought an accounting of the income earned from Part A from September 5, 1997, to October 20, 1997.
[3] State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589, 639 N.E.2d 1189, 1192.
[4] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264,274.
[5] National City Bank v. Beyer (2000), 89 Ohio St.3d 152, 156,729 N.E.2d 711, 715, citing Domo v. McCarthy (1993), 66 Ohio St.3d 312,314, 612 N.E.2d 706, 708.
[6] Domo, supra.