[Cite as *Reed v. Turner*, 2014-Ohio-5109.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Deborah L. Reed et al., | : | |
| Plaintiffs-Appellants, | : | |
| v. | : | No. 14AP-400 (Prob. No. 553947A) |
| Tamara E. Turner, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 18, 2014

*Bellinger & Donahue, Kerry M. Donahue* and *Scott P. Bellinger*, for appellants.

*Kyle B. Smith*, for appellee.

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

TYACK, J.

{¶ 1} Plaintiffs-appellants, Deborah L. Reed and Deana L. Reed ("the Reeds"), appeal the judgment of the Probate Court of Franklin County adopting its magistrate's decision granting distribution of the remainder of a trust to defendant-appellee, Tamara E. Turner. For the following reasons, we affirm the judgment of the probate court.

{¶ 2} The Reeds bring four assignments of error for our consideration:

[I.] THE LOWER COURT DID NOT PROPERLY APPLY THE LAW TO THE FACTS BECAUSE THE WRITTEN TRUST CONTROLS INTENT AND THE TRUSTORS INTENT IS CLEAR FROM THE TRUST DOCUMENT.

[II.] IT WAS ERROR TO DECIDE THE CASE ON SUMMARY JUDGMENT AND REFUSE TO HOLD A HEARING IF THE COURT WAS GOING TO DECIDE THE ISSUE BY GOING

OUTSIDE THE CLEAR INTENT SET FORTH IN THE TRUST DOCUMENT ITSELF.

[III.] THE RULING IN FAVOR OF APPELLEE UPON SUMMARY JUDGMENT WAS A DUE PROCESS VIOLATION AND IN A LIGHT MOST FAVORABLE TO APPELLANT THE CLEAR AND UNAMBIUOUS [sic] TERMS OF THE TRUST SHOULD HAVE CONTROLLED.

[IV.] EXTRINSIC EVIDENCE OF INTENT OF THE TRUSTORS SHOULD NOT HAVE BEEN PERMITTED SINCE THE WRITTEN TERMS OF THE TRUST ARE CLEAR.

{¶ 3} The facts of this case are not in dispute. In August 2001, Robert Judd ("Robert") and Winnie Judd ("Winnie") were married. Robert had one adult daughter, Tamara Turner ("Turner") who is the appellee in this case. Winnie had two adult daughters, the Reeds, appellants herein. On August 8, 2002, Robert and Winnie executed the Judd Family Trust. The corpus of trust contained Winnie's condominium and Robert's Edward Jones brokerage accounts as well as some of Robert's savings accounts. The Judd Family Trust document is 57-pages long and uses terms interchangeably for the same share of the trust, e.g., Decedent's Marital Share Trust B, Decedent's Trust B, Robert W. Judd's Share of the Trust Assets, Trust B.

{¶ 4} On March 22, 2005, Robert died. Pursuant to the terms of the trust, Winnie, as surviving spouse and trustee, divided the trust into two relatively equal and separate shares: Survivor's Marital Share Trust A and Decedent's Marital Share Trust B. Survivor's Marital Share Trust A was revocable and the corpus contained Winnie's condominium. Decedent's Marital Share Trust B is irrevocable and contains the financial accounts Robert brought into the marriage.

{¶ 5} After funding Survivor's Trust A and Decedent's Trust B, Winnie exercised her rights and defunded Trust A by transferring the condominium into her own name. Winnie also properly exercised her rights under the trust and used assets of Decedent's Trust B for her maintenance and support.

{¶ 6} Winnie died on August 11, 2011. The condominium was passed to her daughters, the Reeds, and was sold for $90,000 in November 2012. Winnie's funeral

expenses were paid by Deborah Reed and totaled more than $10,000.  At the time of Winnie's death, there was approximately $75,000 remaining in Decedent's Trust B.

{¶ 7}  In May 2012, the Reeds filed a complaint in the Franklin County Probate Court for declaratory judgment arguing that they are entitled to one-half of the remaining assets in the Decedent's Trust B after Trust B paid for Winnie's funeral expenses.  Turner argued that Trust B is to be distributed outright to her.  During a scheduling conference with the magistrate, both parties' counsel agreed that the case only involved legal issues which could be properly presented through briefs.  Both parities subsequently filed motions for summary judgment.

{¶ 8}  On September 24, 2013, the magistrate in the probate court issued her decision.  The magistrate recommended that appellant's motion for summary judgment be denied, a $350 fee be paid from Decedent's Trust B for tax preparation and the remainder of Decedent's Trust B be distributed outright to Turner.  The magistrate's decision found decedent's Trust B to have no responsibility for paying the funeral expenses of Winnie Judd.  Turner's request for attorney fees and legal costs were denied.

{¶ 9}  The Reeds filed objections to the magistrate's decision and also requested an oral hearing on their objections.  Turner filed a response to the objections and a request for a hearing.  There was also a motion to file additional documents with the court.  On April 22, 2014, the probate court issued its judgment allowing the filing of additional documents, denying the request for an oral hearing and adopting the magistrate's decision.

{¶ 10} There are no disputed facts in this case, only disputed interpretations of the trust document.  Therefore summary judgment is appropriate.  Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:

> [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion * * *.

{¶ 11} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 65-66 (1978).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

Civ.R. 56(E). Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶ 12} De novo review is well established as the standard of review for summary judgment. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We stand in the shoes of the trial court and conduct an independent review of the record applying the same summary judgment standard. As such, we must affirm the trial court's judgment if any of the grounds raised by the moving party, at the trial court's level, are found to support it, even if the trial court failed to consider those grounds. *See Dresher v. Burt*, 75 Ohio St.3d 280 (1996); *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 13} The Reeds in their first assignment of error argue that the probate court erred in determining the intent of Robert and Winnie in construing the language of the trust document. They argue that Turner should not receive the balance of Decedent's Trust B but it should be distributed evenly between the parties after Winnie's funeral expenses are paid.

{¶ 14} One of the fundamental tenets for the construction of a will or trust is to ascertain, within the bounds of law, the intent of the testator, grantor or settlor. *Domo v. McCarthy*, 66 Ohio St.3d 312, 314 (1993). The intent can be ascertained from the express terms of the trust itself if the instrument is not ambiguous. *Id.* Interpreting a trust is akin to interpreting a contract; as with trust, the role of courts in interpreting contracts is "to ascertain and give effect to the intent of the parties." *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, ¶ 9.

{¶ 15} We look to the language of the trust to determine the intent of trustees Robert and Winnie:

> **DEATH OF TRUSTOR**
>
> Upon the death of either Trustor the Surviving Trustee shall divide and allocate the Trust Estate into two (2) separate shares * * *. One share shall be designated as Survivor's Trust A and the other share shall be designated as Decedent's Marital Share, Trust B.
>
> * * *
>
> Decedent's Marital Share shall consist of the Decedent's one-half (1/2) interest in the commonly owned property or community property of the Trust Estate, one-half (1/2) interest in the quasi-community property and all other property included in the Trust Estate as the Separate Property of the Decedent Trustor. Decedent's Martial Share shall be placed into Decedent's Trust B. Upon creation of such Trust shares, Decedent's Trust B is irrevocable.
>
> The Surviving Trustee shall have the sole discretion to select the commonly owned, community and quasi-community assets or the proportionate share of any such assets which shall be included in the Decedent's Trust B.

(R. 1, Trust Document, 26.)

{¶ 16} Upon the death of Robert, Winnie did divide the corpus of the Judd Family Trust assets into two trusts of nearly equal value, with Survivor's Trust A containing the condominium that Winnie owned before the marriage and Decedent's Trust B containing the accounts Robert brought into the marriage. The trust makes clear then the beneficiaries of the Decedent's Trust B.

### Distribution of Residual of Trust B

The balance of the principal of Trust B shall be distributed in accordance with the provision specified in the section of this Trust titled "ALLOCATION AND DISTRIBUTION OF TRUST ASSESTS."

(R. 1, Trust Document, 33.)

### ALLOCATION AND DISTRIBUTION OF TRUST ASSETS

### Primary Beneficiaries of Robert W. Judd's share of the Trust Estate

Unless otherwise herein provided, upon or after the death of the Surviving Trustor, the Primary Beneficiary of Robert W. Judd's share of this Trust is Tamara E. Turner.

(R. 1, Trust Document, 37.) In the event of Turner's death before receiving her entire share, the undistributed balance would be distributed to her children or her children's heirs. (R. 1, Trust Document, 37.) If all the issue of Turner were to die before receiving their share then the balance would be distributed among Robert Judd's primary beneficiaries. *Id.*

{¶ 17} We find that the intent of Robert and Winnie was clear and the trust document is not ambiguous. The trust document clearly shows that the terms, Decedent's Marital Share Trust B, Decedent's Trust B, and Trust B are different terms for the same trust that is composed of assets from Robert W. Judd's Share of the Trust Assets. Winnie made the determination what assets were placed in Trust B, and having done so created an irrevocable trust. It is clear that Robert's share of the trust was determined by Winnie and placed in Trust B where it ceased to be commonly owned or community property. The intent of Robert and Winnie was to have assets of Decedent's Trust B be distributed only to Turner upon the death of Winnie, the surviving trustor.

{¶ 18} The Reeds also argue in their brief that the intention of trustors was that the funeral expenses of both Robert and Winnie be paid from the trust and that this provision demonstrates that Robert and Winnie considered all of the trusts assets communal property. However, it was conceded at oral argument that the trust document clearly

requires all trustees to agree to pay these funeral expenses out of Decedent's Trust B after Survivors' Trust A had been devalued with the removal of the condominium.  (R. 1, Trust Document, 8.)  The probate court correctly determined that the funeral expense should not be paid out of Decedent's Trust B.  The method of payment of the funeral expense of the Survivor Trustor through Trust A only reinforces our findings of the trustors' intent that Robert's share of the trust, Decedent's Trust B, should pass to only his heir.

{¶ 19}  The first assignment of error is overruled.

{¶ 20}  The second assignment of error argues that a hearing should have been granted on the Reeds' objection to the magistrate's decision.  In this case, the probate court was not required to grant such a hearing.  "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. * * * Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate."  Civ.R. 53(D)(4)(d).  Whether to grant such a hearing is within the discretion of the probate court.  *Losey v. Diersing*, 12th Dist. No. CA2012-06-048, 2013-Ohio-1108, ¶ 11.  There is no argument that the Reeds could not have produced evidence for consideration by the magistrate.  The probate court did not abuse its discretion in refusing to conduct an oral hearing on the objections to the magistrate's decision.

{¶ 21}  The second assignment of error is overruled.

{¶ 22}  The third assignment of error argues that the Reeds' due process rights were violated when this case was resolved through summary judgment.  A hearing was not required and pursuant to Civ.R. 53(D)(4)(d) conducting such a hearing was within the probate court's discretion.  There was no due process violation.

{¶ 23}  The third assignment of error is overruled.

{¶ 24}  The fourth assignment of error argues the probate court erred in finding that Decedent's Trust B was not community property of the marriage.  The Reeds argue that Robert and Winnie's intentions were that all trust assets be considered as community property.  The argument relies on one section of the trust.  "All property held by the undersigned * * * is the commonly owned or community property of the said Trustors unless otherwise designated by writing in the Trust documents."  (R. 1, Trust Document,

56,  Letter of intent and Declaration of Gift.)  The Reeds argue that no writing exists which designates any property in the trust as separate.

{¶ 25} This provision of the trust document cannot be read in isolation.  Due weight must be given to all the words and provisions of a trust instrument.  *Mumma v. Huntington Natl. Bank of Columbus*, 9 Ohio App.2d 166 (10th Dist.1967).  After Robert died, Winnie transferred property from being community property to being separate property when she created Survivor's Trust A and Decedent's Trust B.  This division was in accordance with the trust and satisfies the intention of Robert and Winnie to have assets available for both Robert's and Winnie's heirs upon both their deaths.

{¶ 26} The fourth assignment of error is overruled.

{¶ 27} Having overruled all the assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

————————