Matthias, J.
 

 The record presents a single question of law which is: Under the will of Sylvanus A. Brower did Stanley J. Brower have a vested interest in the real estate involved subject only to the life estate of Emma S. Brower, or did he have a defeasible fee simple estate which was divested by the occurrence of his death prior to the death of the life tenant?
 

 
 *678
 
 The same question, differently stated, is whether Robert Brower received his title to a portion of the-real estate directly from his grandfather or from his-own father?
 

 The lien of the bank is on the interest and title of Stanley J. Brower and the decision of the question presented determines the validity of its lien.
 

 The contention of the bank is that at the death of the testator a one-fifth interest in his land vested in , Stanley J. Brower, subject only to the rights of the-life tenant, and hence that he (Stanley J. Brower) could legally encumber his interest therein.
 

 The bank argues that in the provision, “if in said case any of my children .should die and leave heirs I desire that said heirs shall receive that part due its-parent,” the words, “should die and leave heirs,”' are referable to the death of the testator and mean “should die” prior to the death of the testator, and, therefore, that Stanley J. Brower having survived his father the title to one-fifth of such real estate became vested in Stanley J. Brower upon the death of his father.
 

 The answering appellee contends that, although the-early vesting of estates is favored, a contrary intent and purpose of the testator is clearly disclosed by the language employed in his will.
 

 The rule in favor of the vesting of an estate at the death of the testator, like every rule of construction, will be controlled by the intention of the testator as gathered from the whole will. 41 Ohio Jurisprudence, 729, Section 614, and cases cited.
 

 The testator probably had little knowledge of such terms as contingent remainder, defeasible fee, executory devise, etc., but he evidently did know just what he desired to do with his home farm, and it is the-duty of the court to brush aside technical constructions-
 
 *679
 
 ¡and endeavor to determine, from the language of the will, the intent and purpose of the testator.
 

 In our opinion that purpose is expressed in clear •and unambiguous terms. He wanted his wife to have, ■during her lifetime, the homestead on which they resided. He desired that at her death the farm be •disposed of in such way as woul'd be to the best interest •of his children, whether by dividing among them or by selling and dividing the proceeds. That event might not occur until some years in the future, and in the meantime one or more of his children might .have died, and it was his desire, which he clearly ■expressed, that in such event the heirs of any deceased child should succeed to the rights and interest of his parent.
 

 Rules of construction are designed to aid in the interpretation of wills. None should be permitted to thwart the desire and purpose of the testator when 'they may be ascertained from the language employed. From the language employed, it is clear that, regardless of the time when any of his sons or daughters ■should die, their surviving children should upon the •division or distribution of the property, following the death of the life* tenant, receive the part thereof clue the deceased parbnt.
 

 The rule is well settled that provisions such as those, used in this will, referring to the contingency of ■death, no limit as to the time thereof being expressed, must be construed as meaning death at any time. Here ■the language, expressed in the will, is general and •not restricted to death of the devisee within the testator’s lifetime. ' Had it been the purpose and Intention of the testator to limit the devisee’s death to -the time within or during his own lifetime it could have been very easily indicated. 41 Ohio Jurisprudence, 690, Section 575, and cases cited.
 

 
 *680
 
 We direct particular attention to the cases of
 
 Niles
 
 v.
 
 Gray,
 
 12 Ohio St., 320;
 
 Briggs
 
 v.
 
 Hopkins et al., Exrs., 103
 
 Ohio St., 321, 132 N. E., 843;
 
 Ohio Natl. Bank of Columbus, Gdn.,
 
 v.
 
 Harris,
 
 126 Ohio St., 360, 185 N. E., 532; and
 
 Steinbrenner
 
 v.
 
 Dreher,
 
 140 Ohio St., 305, 43 N. E. (2d), 283. The principle announced and applied in those cases is controlling in this case. In practically every aspect the
 
 Hárris case
 
 is similar to the instant case. It is stated in the opinion in that case :
 

 “Under the foregoing authorities * * * the words ‘die without issue’ would be interpreted as referring to the time of the death of * * * the first taker. By a parity of reasoning, where the devisee dies leaving issue, the use of the words ‘in case she dies leaving issue,’ or words of similar import, should likewise be referable to the time of the death of that devisee.”
 

 In the
 
 Harris case
 
 the primary estate was an immediate estate in fee simple while in the instant case it is a vested remainder in fee simple preceded by a life estate which is to be followed by a final distribution as directed in the will. In the instant case the testator, having provided a life estate in the home farm for his wife, and directed that upon her death it should be divided among his five children, but in the event one of them had theretofore died leaving an heir, such heir should receive his parent’s share, the portion of the estate which was due the deceased parent vested in his surviving son, the result being that such heir received his title directly from the testator and not from the parent.
 

 No beneficial purpose would be served by the discussion or even the citation of the many cases bearing on the question here presented, some of which are readily distinguishable in the facts involved but none
 
 *681
 
 ■of which are inconsistent with onr conclusion in this ■case.
 

 We are in accord with the judgment of the Court ■of Appeals. That judgment therefore is affirmed.
 

 Judgment affirmed.
 

 Wbygandt, C. J., Turner, Hart, Zimmerman, Sohngen and Stewart, JJ., concur.