CENTRAL TRUST COMPANY OF NORTHERN OHIO, N.A., APPELLEE, *v.*
SMITH, APPELLANT; SMITH ET AL., APPELLEES.

[Cite as Central Trust Co. of Northern Ohio, N.A. *v.* Smith (1990),
50 Ohio St. 3d 133.]

(No. 88-1410—Submitted September 26, 1989—Decided April 18, 1990.)

* * *

"* * *

*Wickens, Herzer & Panza,*

*Richard D. Panza, Thomas Pillari, Brian J. Jereb* and *Charles J. Pawlukiewicz,* for appellee Central Trust Co.

*Millet & Sprague, Madelon Sprague* and *Paul L. Millet,* for appellant.

*Flynn, Py & Kruse Co., L.P.A.,* and *John E. Rosino,* for appellees Mary Jo Smith et al.

HOLMES, J.    This cause arose from a declaratory judgment action filed by the trustee of a trust established by the will of Loretta A. Smith, seeking a construction of the terms of the trust. The appeal presents two questions: first, whether Bryan Smith's status as an adopted son of Ralph J. Smith, Jr. excluded him from the class of "the children of Ralph J. Smith, Jr., whether now living or born hereafter"; and second, whether, reasonably construing the terms of this testamentary trust, the period within which new members could be included in this class closed at the time of the testator's death, before Bryan became eligible.

The court's function in construing a will, including its trust provisions, is to determine and apply the testator's intent as expressed in the language of the whole will, and read in light of the applicable law, and circumstances surrounding the will's execution. *Townsend's Exrs.* v. *Townsend* (1874), 25 Ohio St. 477; *Wills* v. *Union Sav. & Trust Co.* (1982), 69 Ohio St. 2d 382, 23 O.O. 3d 350, 433 N.E. 2d 152; *Tootle* v. *Tootle* (1986), 22 Ohio St. 3d 244, 22 OBR 420, 490 N.E. 2d 878. Similarly, we stated in *Ohio Citizens Bank* v. *Mills* (1989), 45 Ohio St. 3d 153, 155, 543 N.E. 2d 1206, 1208, that "* * * it is axiomatic that the intent of the testator, grantor, or settlor will be ascertained and given effect wherever legally possible. * * * The express language of the instrument generally provides the court with the indicators of the grantor's intentions * * *." However, we also pointed out that other factors must be considered. We stated that various presumptions or rules of construction have historically been utilized by courts in this area of the law. That case, as does this case, dealt with the rights of an adopted child. Accordingly, in *Mills,* we construed the "stranger to the adoption" presumptive rule in light of the circumstances surrounding the execution of the *inter vivos* trust involved in that case, and in the context of the statutes in effect when the trust was created regulating the rights of adopted children, including the legislative history of such statutes.

*Mills,* however, involved an *inter vivos* trust, rather than a testamentary trust. In *Mills* we applied the law existing at the time of the creation of the settlor's *inter vivos* trust, G.C. 10512-23. We then examined the next amendment of the statute, G.C. 8004-13, 124 Ohio Laws 178, 193, effective August 28, 1951. We quoted the pertinent part of this statute as follows:

" '* * * For all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents; provided:

" '(A) Such adopted child shall not be capable of inheriting or succeeding to property expressly limited to heirs of the body of the adopting parent or parents * * *.' " *Mills, supra,* at 159, 543 N.E. 2d at 1211.

We stated that "[t]his provision, by its express language, was still not

made specifically applicable to *trust* instruments." Therefore, the common-law rule known as "stranger to the adoption" was abrogated as to wills, including trusts established by wills, as of the effective date of G.C. 8004-13, even though the doctrine remained viable as to trust instruments until the amendments to R.C. 3107.13 effective in 1972 (134 Ohio Laws, Part I, 499, 500). [1] Thus, the court concluded that the after-adopted children could not take under the trust instrument in that case.

The same section of law, later codified at (former) R.C. 3107.13 (see current R.C. 3107.15 for analogous provisions), is applicable here, in that it remained in substantially the same form until 1972. See Am. H.B. No. 674 (129 Ohio Laws 1566). Whether the language of this will and the intent of the testatrix be interpreted as of the date of the execution of the codicil to the will, *i.e.*, June 16, 1964, or the date of her death, *i.e.*, September 22, 1964, former R.C. 3107.13 must be applied. [2]

Former R.C. 3107.13 specifically set forth that "* * * [f]or all purposes under the laws of this state, including without limitation all laws and *wills* governing inheritance of and succession to real or personal property * * *,

a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents * * *." (Emphasis added.) The only exception was that provided under subsection (A), which stated that "[s]uch adopted child shall not be capable of inheriting or succeeding to property expressly limited to heirs of the body of the adopting parents." [3] Here there was no language expressly excluding adopted persons, or limiting the beneficiaries of the trust to "heirs of the body of the adopting parents." Therefore, according to former R.C. 3107.13, the appellant, as an adopted child, is eligible to participate as a member of the class designated in the trust provisions of the will as "the children of Ralph J. Smith, Jr."

Having determined that the appellant Bryan Smith was eligible to be a member of the class consisting of the children of Ralph J. Smith, Jr., we must decide whether this class closed, and all property rights "vested," at the death of the testatrix, before the appellant was adopted. As in other facets of the interpretation of a will, in determining the time when a named

---

[1] The opinion, although specifically dealing with an *inter vivos* trust and not a testamentary trust, unfortunately referred also to wills. The word *wills* should not have been included within the discussion of the rights of adopted children, and we hereby modify the opinion to apply only to *inter vivos* trust instruments.

[2] "[I]n the absence of a manifest intent to the contrary, a will and its codicil are construed together as if both had been executed at the time of making the codicil." 32 Ohio Jurisprudence 3d (1981) 186, Decedents' Estates, Section 677; see *Negley* v. *Gard* (1851), 20 Ohio 310; *Collier* v. *Collier's Exrs.* (1854), 3 Ohio St. 369.

The general rule is that a will is considered as speaking from the date of the testator's death unless a contrary intent appears. *Bd. of Edn. of Fairfield Twp.* v. *Ladd* (1875), 26 Ohio St. 210; *Union Sav. Bank & Trust Co.* v. *Alter* (1921), 103 Ohio St. 188, 132 N.E. 834; *McMerriman* v. *Schiel* (1923), 108 Ohio St. 334, 140 N.E. 600. A will "speaks from the time of execution as to its meaning and from the death of testator as to its effect and operation." 4 Page on Wills (Bowe & Parker Rev. 1961) 165, Section 30.26.

[3] R.C. 3107.15, effective January 1, 1977, removed even this exception. Am. Sub. H.B. No. 156 (136 Ohio Laws, Part I, 1839, 1851-1852).

class of beneficiaries closes, and the time when a distribution of the trust property will be made, a reviewing court must reasonably ascertain the intent of the testator from a practical application of the language of the whole instrument. "The duty of the court is to interpret the will, not to construct it or make a new one * * *." (Footnote omitted.) 80 American Jurisprudence 2d Wills (1975) 238, Section 1128; *Anderson* v. *Gibson* (1927), 116 Ohio St. 684, 157 N.E. 377.

Both the probate court and the court of appeals agreed that the testamentary trust divided the residuary estate into three equal shares: one to be held in trust for the benefit of the children of her son, Ralph J. Smith, Jr.; one to be held in trust for the children of her daughter Margaret Smith Keller; and one either to be held in trust for the children of Rosemary Smith if she had any children at the time of the death of the testatrix, or to be distributed to Rosemary herself.

Under the language of the trust, each share is a separate gift per stirpes to the beneficiaries of that class. *Richland Trust Co.* v. *Becvar* (1975), 44 Ohio St. 2d 219, 73 O.O. 2d 512, 339 N.E. 2d 830. In essence, each of these shares is a subtrust. This division of shares clearly indicates that the testatrix was thinking of each subtrust's beneficiaries as a class composed of the children of one of her children, from which a reasonable inference may be made that the testatrix had allowed for possible fluctuations in the membership of each group.

A "class gift" is a gift of an aggregate sum to be divided among a group of persons, uncertain in number and specific identification at the time of the gift, but which can be ascertained at a future time, the amount of each share depending on the ultimate number of persons included in the class. Annotation, When is a Gift by Will or Deed of Trust One to a Class (1958), 61 A.L.R. 2d 212, 221. Accord *Hewes* v. *Mead* (1947), 81 Ohio App. 489, 37 O.O. 328, 80 N.E. 2d 212.

If a testamentary gift to a class is in general terms, with no time specified for distribution, the death of the testator will, as a general rule, fix the time for distribution, and close the class at the time of death of the testator. *Wiley* v. *Bricker* (1900), 21 Ohio C.C. 109, 11 Ohio C.D. 429; see, generally, *Woolley* v. *Paxson* (1889), 46 Ohio St. 307, 24 N.E. 599; 3 Restatement of the Law 2d, Property (1988) 132, Section 26.1. However, if the gift is a present bequest to be distributed at a later determinable date, the class members who are in being at the testator's death take a vested interest in the fund then, subject to the addition of members of the class who are born after the testator's death but before the time provided for distribution. *Wiley* v. *Bricker, supra*; see, generally, *Woolley* v. *Paxson, supra*; 3 Restatement of Law 2d, Property: Donative Transfers (1988) 173, Section 26.2, Comment *n*; Simes & Smith, The Law of Future Interests (2 Ed. 1956) 69, Section 634; Casner, Class Gifts to Others Than To "Heirs" or "Next of Kin" — Increase in the Class Membership (1937), 51 Harv. L. Rev. 254.[4]

Although it is desirable, where a

---

[4] "* * * Thus, the rules of construction that apply should make a reasonable choice between what might be said to be the initial desire of a donor, who describes beneficiaries by a class gift term, to include all who come within the described group at any time, and the public interest in promoting the early full utilization of property by closing the class at the time a class member is entitled to a possessory interest in the prop-

reasonable interpretation of the instrument would permit it, to close the beneficiary class early to allow the total vesting of the interests, we must also consider the testator's interest in holding the class open as long as reasonably possible, at least until the first member of the class is entitled to demand distribution of the principal.

In the present case, the testatrix made a gift in trust of the aggregate amount of one-third of her residuary estate, to be shared equally by the children of her son, Ralph J. Smith, Jr., whether living at her death or born thereafter. The trustee was given discretion to distribute income only for certain specific purposes, and could invade principal only if necessary at its sole discretion. The subtrust for the benefit of Ralph's children was handled as one trust fund for investment purposes, but was divided into five accounts setting forth the distribution of income and principal to each beneficiary. The appellees did not show that this subtrust lacked sufficient income earned and accumulated by the trust to satisfy all of the discretionary distributions made to these five original beneficiaries from 1972 through 1975. Appellant Bryan Smith was legally adopted by Ralph J. Smith, Jr. on July 15, 1975, and we conclude that he thereupon became a member of the class, entitled to the same rights to the income and principal of the trust as the original five class members.

Here the language of the trust does not evidence the desire of the testator that immediately upon her death, each class of beneficiaries be closed, and that each of the three shares be divided into separate shares for each member of the class. Rather, the language of the trust provides that after three equal shares are established, the income and principal may be distributed to the beneficiaries for stated purposes by the trustee, when necessary in its discretion, but no distribution of a major interest in such shares was scheduled until future times, i.e., when each child in each class attained the ages of twenty-five and thirty.

The language of the trust provides that all members of the class shall share equally. Based upon this expressed desire of the testatrix, the probate court and the court of appeals determined that separate shares must be established for each of the children of the class as of the death of the testatrix.

In light of the totality of the will and the reasonable intent of the testatrix, we find that it was not necessary to close the class in order to establish separate shares for the beneficiaries of each class, even though we conclude that the number of the class could be increased. Appropriate accounting could establish the interests of the five children living at the date of the death of the testatrix. The

---

erty. When the rule that is adopted closes the class at the time a class member is entitled to a possessory interest, it has been referred to as 'the rule of convenience.' " 3 Restatement of the Law 2d, Property (1988) 132, Introductory Note.

The rule of convenience does not require a class to close when a class gift involves payments of income because no inconvenience is experienced by admitting new members to the class after this type of

discretionary distribution has begun. The amount of each interest fluctuates with the addition of class members, until the class finally closes upon a required distribution of principal. Only when principal must be distributed does it become inconvenient and unfair to admit additional class members. Restatement of the Law of Property (1940) 1590-1591, Section 295, Comment i; Simes & Smith, supra, at 88-89, Section 643.

separate accounting for this class, or subtrust, established by the will, could later reflect the increase in the number of members of this class through the adoption of Bryan, and show that originally each beneficiary had a one-fifth interest in the principal, but after the adoption, each member had a one-sixth interest.[5]

Upon the testatrix's death, each of Ralph J. Smith, Jr.'s children took a vested interest in the trust subject to adjustment upon the birth (or adoption) of another class member prior to the first mandatory distribution, when the oldest child attained the age of twenty-five. The vesting of rights in class members upon the death of the testatrix cannot deny the rights of subsequent class members. If a sixth child had been naturally born to Ralph J. Smith, Jr. during the year following the testatrix's death, the rights of the class members immediately would have become one-sixth rather than one-fifth. Each child's interest was vested, but subject to fluctuation in size with the addition of class members, until the class finally closed, either upon the death of Ralph J. Smith, Jr., or upon the first mandatory distribution of principal. Distribution of principal from the trust was not required, and the class did not close, until the oldest child attained the age of twenty-five in January 1980. The testatrix's plan was to include in the three classes *all* of the children of her son Ralph J. Smith, Jr., and her daughters Margaret and Rosemary. This plan can be reasonably accomplished by determining the final number of members of each class either at the death of each of her children or when the oldest child of each of her children attained the age of twenty-five years, whichever first occurred.

For all the reasons as set forth hereinbefore, the judgment of the court of appeals is reversed, and we remand the cause to the probate court for further proceedings consistent with this opinion.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

SWEENEY and CACIOPPO, JJ., dissent.

MARY CACIOPPO, J., of the Ninth Appellate District, sitting for RESNICK, J.

CACIOPPO, J., dissenting. I must respectfully dissent from the majority decision. The majority states the well-established law that the court's function in a will construction case is to determine and apply the testatrix's intention, as expressed in the language of the whole will, and read in light of the circumstances surrounding the will's execution. The majority then construes the testamentary trust language as creating a per stirpes gift as to each share, for a class of beneficiaries identified as the children of one of the testatrix's children. I believe that construction is not based upon testatrix's intention as expressed, nor as read in light of the circumstances surrounding the will's execution.

---

[5] Class members not in being when income is paid are excluded from that payment. 3 Restatement of the Law 2d, Property: Donative Transfers (1988) 164, Section 26.2, Comment *g.* Bryan Smith was not eligible for any income distributions occurring before his adoption, but is entitled to share in the mandatory distribution of trust principal, and in any distribution of income occurring since his adoption in 1975.

Item VII of the will includes the instruction that "[t]he trust estate shall be treated as composed of three (3) equal shares * * *." Continuing, Item VII identifies the trust beneficiaries, provides for discretionary distributions from both trust income and principal, and provides for final distribution. Testatrix manifests her intent to correlate trust benefits to equal treatment among her three children, through the selected language and document conception. This prevalence of treating testatrix's children equally reveals testatrix's design for trust beneficiaries.

Bryan Smith contends and the majority so found that testatrix made a gift in trust, where one-third of her residuary estate would be shared equally among Ralph J. Smith's children. Upon testatrix's death, each child took a vested interest in the trust subject to open upon the birth or adoption of another child. This contention relies upon rules of construction as the means to establish validity. If the testatrix established a trust where the class of beneficiaries remained open, only an event which closed the class would terminate the opportunity to increase the class membership.

"Rules of construction are designed to aid in the interpretation of wills. None should be permitted to thwart the desire and purpose of the testator when they may be ascertained from the language employed." *McCulloch* v. *Yost* (1947), 148 Ohio St. 675, 679, 36 O.O. 274, 276, 76 N.E. 2d 707, 709.

This case does not present a need to invoke rules of construction. Construing all parts of the will together, I believe testatrix intended the trust beneficiaries to be determined at her decease. Item VII of the will states in part:

"* * * In the event that, at the time of my decease, my daughter, Rosemary Smith, is single, or if married has no children, one of such shares shall be paid to her outright by said trustees. If Rosemary Smith has a child or children *at the time of my decease,* the said trustees shall retain such share, and the income therefrom, and such part of the principal as in the sole discretion of the trustees shall be necessary for the college education of *such child or children.* * * *" (Emphasis added.)

Item VII also contains several references to each "child's share." Item IX contains additional evidence of testatrix's intent in stating: "In creating the foregoing trust I am cognizant of the fact that upon my decease, my children will be well provided for from sources other than my personal estate. * * *"

Testatrix's express language clearly establishes the intent to determine trust beneficiaries upon testatrix's death. Testatrix's chosen language — "if Rosemary Smith has a child or children at the time of my decease" — is unambiguous. Ambiguity may emerge if one examines and construes only single paragraphs of Item VII. Bryan Smith's contention is based upon that seemingly legitimate but fashioned ambiguity.

Testatrix executed her will with the knowledge that Ralph J. Smith, Jr. and Margaret Smith Keller each had children, and that each could have more children. Testatrix was equally cognizant that Rosemary Smith had no children, but could have children in the future.

Testatrix chose to treat each of her three children equally in expressly instructing that the trust be treated as composed of three equal shares. Testatrix did not instruct that three separate trusts or subtrusts be administered, or that trust benefits be

distributed per stirpes. The trust beneficiaries took individual gifts through testatrix's children. Testatrix did not create a class gift.

A class gift requires beneficiaries to take a per capita share. Testatrix chose not to provide the beneficiaries a per capita share, because to create such a scheme would allow testatrix's children to receive unequal benefits. The child having the most children would receive the most benefit. Testatrix also provided an express instruction which addressed the situation of a beneficiary's death occurring before final distribution. That instruction defeats any per capita distribution scheme. The majority chooses to ignore the instructive language in Item VII, which states:

"* * * In the event of the death of any of the children herein provided for before final distribution is made to such child, his or her share shall vest, at the time he or she would have attained the age of thirty (30) years, in such persons as shall then constitute the next of kin of such child according to the laws and statutes of the State of Ohio relating to descent and distribution then in force and effect."

The express distribution scheme for trust benefits defeats a per stirpes or per capita distribution.

Testatrix chose to describe the trust's individual beneficiaries rather than name those individuals. As is apparent from the trust provision for Rosemary Smith's children, testatrix did not know at the time of her will's execution who would be the beneficiaries. However, the express language which testatrix chose identifies the individual beneficiaries.

It is reasonable to infer from the express terms of the will that testatrix intended the trust benefits to accrue and be distributed to those grandchildren that she knew, as opposed to the trustee relying upon case law, a combination of distribution schemes, and rules of construction in order to determine those beneficiaries. For the foregoing reasons, the judgment of the court of appeals should be affirmed.

SWEENEY, J., concurs in the foregoing dissenting opinion.