OPINION
{¶ 1} This is an appeal from a judgment of the Probate Court construing the terms of a last will and testament concerning the disposition of proceeds remaining upon the termination of a testamentary trust.
 {¶ 2} The testatrix, Mary P. O'Leary, executed her last will and testament in 1979. The will establishes a trust and contains the following provision:
 {¶ 3} "SIXTH. A. The Trustee, in its sole and absolute discretion, shall use and expend so much of the income and principal of the Trust Estate, as it determines is necessary to provide for the care, comfort, maintenance and support of my son, John Timothy O'Leary, for his lifetime. Any income not used for the support of my said son shall be accumulated and added to the principal of the Trust Estate.
 {¶ 4} "My primary concern is for the proper, loving and understanding care of my son, John Timothy O'Leary and the income and principal of the Trust Estate is to be used for the furtherance of this desire."
 {¶ 5} John Timothy O'Leary was the mentally-retarded son of Mary and Edmund B. O'Leary. In 1966, Mary O'Leary was one of a group of parents of mentally retarded persons that founded Resident Home Association For The Mentally Retarded of Greater Dayton ("Resident Home Assn."), the Appellant herein. Its purpose was to provide a residential home for mentally retarded persons to allow them to avoid institutionalization and remain in contact with their community and families. Mary O'Leary served on the board of Resident Home Assn. for a number of years and donated money for its operation. Her son, John Timothy O'Leary, became a resident of its group home facility in 1982.
 {¶ 6} Mary O'Leary's will also provides that, upon her son's death, the trust created for his benefit will terminate, and its proceeds are then to be divided and distributed as the will provides. Two-thirds of the amount is bequeathed to the University of Dayton. The will further states:
 {¶ 7} "The remaining one-third (1/3) is to be distributed to the Resident Home Association for the Mentally Retarded of Greater Dayton, if the institution is in existence and if it has provided for my said son after my death and until his death. In the event such Resident Home is in existence, but my son, John Timothy O'Leary has not been cared for by this institution but has been cared for by another institution, then one-half (1/2) of such remaining one-third (1/3) shall be distributed to the institution in which my son resided and was provided care, and the other one-half (1/2) to said Resident Home Association. In the event the said Resident Home Association is not in existence, then such remaining one-third (1/3) shall be distributed to the institution in which my son resided and was provided care prior to his death."
 {¶ 8} John Timothy O'Leary remained a resident of Resident Home Assn. from 1982, through Mary O'Leary's death in 1994, and until he was diagnosed with Alzheimer's disease and congestive heart failure in the summer of 2000. Because those conditions required skilled nursing care that Resident Home Assn. was unable to provide, it arranged for John Timothy O'Leary's transfer to Wood Glen, a skilled nursing facility for Alzheimer's patients. He was admitted to Wood Glen on October 9, 2000, and remained there until May 26, 2001, when he was admitted to Sycamore Hospital. John Timothy O'Leary died at Sycamore Hospital on June 4, 2001.
 {¶ 9} While John Timothy O'Leary resided at Wood Glen, Resident Home Assn. kept his room at its group home facility available for his use. His belongings remained there. Also, Resident Home Assn., arranged for private duty aides to assist in his care at Wood Glen, and its representatives and several of John Timothy O'Leary's housemates visited him there.
 {¶ 10} This action was commenced in the Probate court by Plaintiff-Appellee, Bank One Trust Company, the trustee under Mary O'Leary's will at the time of John Timothy O'Leary's death. Bank One asked the Probate Court to construe the bequest in Mary O'Leary's will to determine the proper disposition of the proceeds of her bequest to Resident Home Assn. After taking evidence, the Probate Court determined the bequest should be divided between Resident Home Assn. and Wood Glen, and so ordered. Resident Home Assn. filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 11} "The trial court erred in its construction of the language of the testatrix's will by failing to give effect to the specific language used by the testatrix and the testatrix's intent."
SECOND ASSIGNMENT OF ERROR
 {¶ 12} "The trial court erred in failing to find that appellant's ability to continue to provide a residential environment for the testatrix's son, a condition subsequent to appellant's right to the entire one-third share of the testamentary trust, was excused by the doctrine of impossibility."
 {¶ 13} These assignments of error involve the same facts and present interrelated issues of law. We will therefore address them together.
 {¶ 14} It is well-settled that the sole task of a court which is asked to construe the terms of a will is to ascertain the intent of the testator with respect to the terms involved and to give effect to that intent. Central Trust Co. of Northern Ohio N.A. v. Smith (1990),50 Ohio St.3d 133; Sandy v. Mouhot (1982), 1 Ohio St.3d 143. The testator's intent is determined from the terms of the will itself.Townsend's Executors v. Townsend (1874), 25 Ohio St. 477. Words not technical in nature must be ordinary sense, and "[a]ll the parts of the will be construed together, and effect, if possible, given to every word contained in it." Id., Syllabus by the Court.
 {¶ 15} Mary O'Leary's purpose in making the bequest in issue is evident from the desire she expressed when she established the trust for her son's benefit: "My primary concern is for the proper, loving and understanding care of my son, John Timothy O'Leary and the income and principal of the Trust Estate is to be used for the furtherance of this desire." She gave effect to that primary concern, while still evidencing a desire to support the Resident Home Assn. and its purposes, when she provided for the Resident Home Assn. in the particular way in which she did.
 {¶ 16} The first sentence of the bequest awards a full one-third share of the trust estate to the Resident Home Assn., John Timothy O'Leary's residence of many years, "if the institution is in existence and if it has provided for my said son after my death and until his death." The term "provided" is not defined, but it is reasonably construed to refer to the care that Resident Home Assn. had given John Timothy O'Leary during his time as a resident.
 {¶ 17} The second sentence of the bequest anticipates that some institution other than Resident Home Assn. might provide residential care for John Timothy O'Leary until his death, and in that event bequeaths one-half of the bequest to Resident Home Assn. to that other institution. Consistent with her long-time support of Resident Home Assn., it is to retain the other one-half of its share if it exists at the time of John Timothy O'Leary's death.
 {¶ 18} The final sentence of the bequest directs disposition of Resident Home Assn.'s remaining share if it is not in existence when John Timothy O'Leary dies. Then, and in that event, its entire share is bequeathed to the other institution in which John Timothy O'Leary resided and was provided care prior to his death, anticipating that residential care would be needed throughout his life.
 {¶ 19} We see no ambiguity in these terms. The sequence of bequests is consistent with Mary O'Leary's expressed primary concern for her son's need for care. They create an inducement for any institution in which he might reside until his death to provide "the proper, understanding and loving care of my son" that Mary O'Leary wanted.
 {¶ 20} Based on the evidence it heard, the Probate Court construed and applied the terms of the bequest to find that one-half of Resident Home Assn.'s share should go to Wood Glen. We believe that was a correct decision.
 {¶ 21} John Timothy O'Leary was a patient at Sycamore Hospital when he passed away, but he was there as a transient, on a temporary basis for purposes of medical treatment only. His residence when he entered Sycamore Hospital was Wood Glen; a residence is a "dwelling place," and John Timothy O'Leary had that relationship with Wood Glen until his death.
 {¶ 22} Resident Home Assn. concedes that Wood Glen provided "care of a sort" to John Timothy O'Leary while he resided there, but argues that the care Wood Glen provided was not the form of care that Mary O'Leary had anticipated her son would need. That was the care a mentally-retarded person might require. Wood Glen's care was for John Timothy O'Leary's physical inflictions. There is a difference. However, Mary O'Leary did not limit the kind of care an institution other than Resident Home Assn. might provide in order to qualify for the bequest she made. The care that Wood Glen provided for John Timothy O'Leary is sufficient to qualify, because it is what he required, and there is no basis to conclude that Mary O'Leary intended to exclude her son's need for such care from the scope of her bequest.
 {¶ 23} Resident Home Assn. also argues that it continued to provide care for John Timothy O'Leary after he was transferred to Wood Glen, and that it held his room at its group facility available for him. Even so, John Timothy O'Leary was then no longer a resident of Resident Home Assn. after he was moved to Wood Glen. And, there is no suggestion that he was expected to return. Residence is a determinative factor in the bequest Mary O'Leary made, along with her son's care.
 {¶ 24} Resident Home Assn. also argues that it should be relieved of the requirement that it be John Timothy O'Leary's residence until his death because his condition made that impossible. Resident Home Assn. provides no skilled nursing care, which John Timothy O'Leary's condition required in the months before his death.
 {¶ 25} We understand the doctrine of impossibility of performance to pertain to the law of contracts. It operates to relieve a promisor of a duty which becomes impossible to perform after the contract is formed. However, Resident Home Assn. made no promise to continue to provide for John Timothy O'Leary's care until his death, and it thus had no duty which thereafter become impossible of performance.
 {¶ 26} In the law of wills and bequests, when a condition which is attached to a bequest is not satisfied, for whatever reason, the bequest lapses. That is what happened here when, prior to his death, Resident Home Assn. no longer provided residential care for John Timothy O'Leary. However, and consistent with the further bequest in Mary O'Leary's will, the proceeds of the bequest did not become a part of the residuary estate, but were instead poured over into a bequest shared by Resident Home Assn. and Wood Glen. That outcome is wholly consistent with the intent of Mary O'Leary in making her will, which the Probate Court properly ascertained, and to which its judgment gave effect.
 {¶ 27} The assignments of error are overruled. The judgment from which the appeal is taken will be affirmed.
FAIN, P.J. and BROGAN, J., concur.