PRENTISS, Appellant,

v.

GOFF et al., Appellees.

[Cite as *Prentiss v. Goff,* 192 Ohio App.3d 475, 2011-Ohio-734.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 95251.

Decided Feb. 17, 2011.

Rifici Law Office and Anthony M. Rifici, for appellant.

Ziegler, Metzger & Miller, L.L.P., Stephen M. Bales, and Janeane R. Cappara, for appellee William H. Goff.

Keybank National Association and Martin C. Boron, for appellee Keybank.

COLLEEN CONWAY COONEY, Judge.

{¶ 1} Plaintiff-appellant, Caroline Goff Prentiss ("Prentiss"), appeals the probate court's denial of her petition for declaratory judgment in which she requested that the court declare that defendant-appellee William H. Goff ("William") terminated his life estate in property located at 10024 Lakeshore Drive, Bratenahl, Ohio ("the property"). We find no merit to the appeal and affirm.

{¶ 2} In November 2008, Prentiss filed her petition for declaratory judgment, seeking the termination of William's life estate, thereby entitling her to exercise a second right of refusal granted to her under the last will and testament of her mother, Caroline B. Goff ("Caroline"). The case proceeded to a trial before a magistrate, at which the following facts were presented.

{¶ 3} Caroline died testate in 1983, and her will was admitted to probate. In her will, Caroline gave her son Frederick H. Goff ("Frederick") the first right to purchase the property, which was the family home. If he failed to exercise that right, he was given a life estate in the property. That life estate would continue until he "released and renounced" it or failed to move in and use the property within one year of Caroline's death. It is undisputed that Frederick chose not to exercise his right to purchase and instead accepted the life estate.

{¶ 4} Following Caroline's death, litigation commenced, seeking to determine and interpret her will. Edward A. Eisele and Ameritrust Company, the co-executors of Caroline's estate, sought a declaratory judgment to declare that Frederick failed to preserve his life-estate interest in the property because he failed to comply with certain requirements set forth in Caroline's will. This court held that although Frederick did not exercise his right to purchase the property, he preserved his life-estate in the property by moving into the residence in a timely fashion. *Eisele v. Goff* (Nov. 26, 1986), Cuyahoga App. Nos. 51712, 51713, 51744, 51749, and 51792, 1986 WL 13595.

{¶ 5} William lived at the property with his father, Frederick, from the time of Caroline's death in December 1983 until Frederick's death in December 1998. Caroline's will gave Frederick the testamentary power to appoint his life-estate interest to William. In his will, Frederick designated William as the successor life tenant in the property, subject to the same terms and conditions set forth in Item II(B) of Caroline's will.

{¶ 6} Item II(C) of Caroline's will gave a second right to purchase the property to Prentiss. According to the terms of the will, Prentiss's right to purchase the property becomes operative upon the termination of William's life estate. Prentiss and William disagree about whether William's life estate has terminated.

{¶ 7} To preserve the life estates, Caroline's will dictated that the life tenant (1) must pay the real estate taxes, insurance, and maintenance costs of the residence, (2) must not renounce and release the life estate, (3) must move into the property within one year of the previous life-estate owner, and (4) must use the property as their residence.

{¶ 8} In February 2004, William formed Fifth Derivative, L.L.C. William's irrevocable trust is Fifth Derivative's sole member. Fifth Derivative uses the property as its address and has no bank accounts or other assets. In October 2006, William executed a quitclaim deed conveying all of his interest (i.e., his life estate) in the property to Fifth Derivative, L.L.C. Prentiss contends that William terminated his life estate by executing the 2006 quitclaim deed that conveyed his life estate to Fifth Derivative, L.L.C.

{¶ 9} In his findings of fact and conclusions of law, the magistrate concluded that William did not terminate his life estate in the property by transferring it to Fifth Derivative. The trial judge affirmed the magistrate's decision, and Prentiss now appeals, raising four assignments of error.

### "Release and Renounce"

{¶ 10} In her first assignment of error, Prentiss contends that the trial court failed to identify the dispositive issue of the case because it applied the "release and renounce" test to William's life estate when it should have considered all grounds for "termination" of the life estate independently. Item II(B) of Caroline's will provides conditional limitations on the life estates that, if broken, would terminate the life-estate interest. Specifically, Item II(B) provides:

> If my son does not exercise such right, then I give and devise to him a life estate in my Bratenahl residence (including the items deemed fixtures as aforesaid) subject to his payment of the real estate taxes thereon, insurance premiums, and all costs of maintaining the buildings, grounds and gardens in a reasonably good state of presentability and repair. Provided, however, that such life estate shall terminate in any event if my son shall renounce and release the same, shall fail to move into the Bratenahl residence and use it as his residence within a period of one year following my death, or shall for any reason thereafter terminate his use of and residence in my Bratenahl residence.

{¶ 11} At trial, Prentiss stipulated that William moved to the property within one year of his father's death and never terminated his use of the property. William testified that he has paid all the real estate taxes for the property and maintained insurance since his father's death in 1998. He also testified that he maintains the buildings and employs a landscaper to maintain the grounds. Since William satisfied these conditions, the trial court focused its attention on whether

William "renounced and released" his life estate when he transferred it to Fifth Derivative.

{¶ 12} As this court held in *Eisele v. Goff,* 1986 WL 13595, when interpreting the language in a will, the court must ascertain the testator's intent from the words of the will by giving the words their usual and customary meaning. Id. at *5. Applying the plain meaning of the word "release," the trial court found that the quitclaim deed constituted a release of William's life estate because "a quitclaim deed is a release of any and all interest a releasor possesses," even though William's trust was the sole member of Fifth Derivative.

{¶ 13} However, the trial court also found that William never renounced his life estate, as evidenced by the actions he took to care for the property. William paid all the real estate taxes and insurance premiums for the property. He installed a new driveway, a new patio, central air, an in-ground sprinkler system, and a new water heater. He also remodeled the kitchen and as four bathrooms, and hired a landscaper to maintain the grounds. The trial court remarked that William continued to do all these things after he executed the quitclaim deed. We agree with the trial court's conclusion that these actions are contrary to a renunciation of the property but rather evidence an intent to keep and maintain the property.

{¶ 14} Prentiss argues that this conclusion ignores the fact that her second right to purchase the property is an executory interest that arises upon termination of William's life estate and further limits William's life estate. Item II(C) of Caroline's will provides:

If my son does not exercise his first refusal right to purchase and shall renounce his life estate, or upon the termination of his life estate (or that of his son, WILLIAM) at his death or for any reason, as the case may be, my daughter CAROLINE, shall have the second refusal right to purchase (under the same terms granted to my son), but if she does not exercise such right, then I direct that my Bratenahl Residence be placed on the market for sale, but none of the aforesaid items of chattel property shall be deemed fixtures.

{¶ 15} Prentiss contends that the phrase "or upon termination of his life estate (or that of his son, WILLIAM) at his death or for any reason, as the case may be," means that his life estate may be terminated "for any reason." Thus, she argues that the trial court erred in requiring proof of both a release and a renunciation to terminate the life estate. She argues that because they are not conditions precedent to her devised interest, proof of just one of these conditions, i.e., release of the property, is sufficient to terminate the life estate and allow her executory interest to "spring up" automatically pursuant to Caroline's will. We disagree.

{¶ 16} When construing the language in a will, our fundamental goal is to "ascertain [and carry out], within the bounds of the law, the intent of the testator." *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706. When the language of the will is clear and unambiguous, the testator's intent must be ascertained from the express terms of the will itself. *Domo* at 314. In addition, when determining the testator's intent, we consider not just the contested language but rather the "whole will, and read in light of the applicable law, and circumstances surrounding the will's execution." *Cent. Trust Co. of N. Ohio, N.A. v. Smith* (1990), 50 Ohio St.3d 133, 136, 553 N.E.2d 265.

{¶ 17} Item II(B) of Caroline's will states that the "life estate shall terminate in any event if my son shall renounce *and* release the same, shall fail to move into the Bratenahl residence and use it as his residence within a period of one year following my death, or shall for any reason thereafter terminate his use of and residence in my Bratenahl residence." (Emphasis added.) Thus, the plain language of the will specifies three events in which the life estate in the property terminates: (1) Frederick/William Goff fails to move into the property and use it as his residence within one year of Caroline's death, (2) if the life tenant shall "renounce and release" the life estate, and (3) if the life tenant terminates his use of the property as his residence. The fact that "renounce and release" are combined within the same event clearly implies that both a renunciation and a release are necessary to result in termination of the life estate.

{¶ 18} Furthermore, the phrase "upon termination of his life estate (or that of his son, WILLIAM) at his death or for any reason, as the case may be * * *" in Item II(C) does not change the plain meaning of Item II(B). When read in the context of the entire will, the language "or for any reason" refers to other listed conditions that could cause termination of the life estate, i.e., moving out of the residence, failing to pay taxes, failing to maintain the house, etc.

{¶ 19} The trial court considered all possible causes of termination of the life estate. Since it was undisputed that Frederick and William moved to the property within one year after Caroline's death and that they paid taxes and insurance and otherwise maintained the property, the only issue the court had to consider was whether William's conveyance of his life estate to Fifth Derivative, L.L.C., constituted a release and renunciation of the life estate. Applying the unambiguous language of the will, the trial court properly concluded that William did not terminate his life estate because he never renounced it.

{¶ 20} Accordingly, the first assignment of error is overruled.

### The Quitclaim Deed

{¶ 21} In her second assignment of error, Prentiss argues that the quitclaim deed automatically terminated William's life estate as a matter of law.

In support of her argument, Prentiss cites the boilerplate language in the deed that states that William Goff, as grantor, has

given, granted, remised, released and forever quit-claimed, and do by these presents absolutely give, grant, remise, release and forever quit-claim unto the said Grantee [Fifth Derivative], its successors and assigns forever, all such right and title as he, the said Grantor [William Goff] have or ought to have in and to the following described piece or parcel of land * * *.

{¶ 22} Nothing in Caroline's gift of the life estate prohibits such a transfer, which for all intents and purposes, is a transfer to himself, since William's trust is the sole member of Fifth Derivative. The will prohibits only events that renounce and release the life estate. In determining whether William released and renounced his life estate, the trial court properly considered William's intent as evidenced by his actions. The court noted that not only did William live on the property, he invested in renovations for the kitchen and four bathrooms, a new driveway, and a new patio. He also painted several rooms in the house, as well as the exterior. The court reasonably concluded that these actions demonstrate an intent to keep and enjoy the property rather than a renunciation.

{¶ 23} Accordingly, the second assignment of error is overruled.

## Parol Evidence

{¶ 24} In the third assignment of error, Prentiss argues that the trial court erred by permitting William to testify as to his intent in executing the quitclaim deed in favor of Fifth Derivative. Prentiss claims that this testimony violated the parol evidence rule.

{¶ 25} The parol evidence rule states that " 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' " *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 734 N.E.2d 782, quoting 11 Williston on Contracts (4th Ed.1999) 569–570, Section 33:4. Despite its name, the parol evidence rule is not a rule of evidence, nor is it a rule of interpretation or construction. The parol evidence rule is a rule of substantive law that when applicable, defines the limits of a contract. *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265, paragraph one of the syllabus.

{¶ 26} The trial court did not violate the parol evidence rule because it never considered evidence outside the four corners of the will to interpret the will, nor did it interpret the terms of the quitclaim deed, nor any agreement between parties. Rather, in determining whether William renounced his life estate, the

court allowed William to testify as to his reasons for placing his life estate into the name of Fifth Derivative. William testified that he transferred the property to Fifth Derivative to remove his name as the property owner from the public records because telemarketers and other salespeople used that information to harass him with solicitations. He also believed that it would protect him from identity theft. This testimony was not used to interpret Caroline's will or the quitclaim deed, or to vary any written document. It was merely offered to determine whether William had renounced the life estate. Since this evidence was not used to interpret the will or the quitclaim deed, but only as evidence of the intent behind William's actions, it did not violate the parol evidence rule.

{¶ 27} Therefore, the third assignment of error is overruled.

### Manifest Weight

{¶ 28} In the fourth assignment of error, Prentiss contends that the trial court's decision is against the manifest weight of the evidence. However, rather than analyzing the evidence adduced at trial, Prentiss argues: "[T]he foregoing three (3) Assignments of Error, and the supporting arguments * * * clearly establish the trial court made several errors of law; and, further those errors of law are such that had they not been made, there would be no evidence in the record supporting the trial court's decision."

{¶ 29} However, having overruled Prentiss's first three assignments of error, we have not found any errors of law. Moreover, the evidence weighs heavily in favor of the court's judgment. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed on appeal as being against the manifest weight of the evidence. *Bryan–Wollman v. Domonko,* 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3.

{¶ 30} As previously discussed, Caroline's will provided that the life estates would be terminated if the life tenants failed to move into the property within one year of her death, if they moved out of the property, or if they released and renounced their life estates. It is undisputed that the life tenants, Frederick and William, moved into the property within one year of Caroline's death and that they continued to live there and maintain the property. Although William conveyed his life estate to Fifth Derivative, which is wholly owned by himself, his actions belie a renunciation of the property. Thus, the court's conclusion that William did not terminate his life estate is supported by competent, credible evidence.

{¶ 31} Accordingly, the fourth assignment of error is overruled.

Judgment affirmed.

BLACKMON, P.J., and BOYLE, J., concur.