[Cite as *In re Estate of Stockmaster*, 2011-Ohio-3006.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

IN THE MATTER OF
THE ESTATE OF                           CASE NO.  13-10-43
       STELLA R. STOCKMASTER,

[HAROLD STOCKMASTER –               O P I N I O N
       APPELLANT].


Appeal from Seneca County Common Pleas Court
Probate Division
Trial Court No. 20071114

Judgment Affirmed

Date of Decision:    June 20, 2011


APPEARANCES:

       James H. Ellis III for Appellant.

       Ronald R. Smith for Appellee.

**PRESTON, J.**

{¶1} Appellant, Harold J. Stockmaster (hereinafter "Harold"), appeals the judgment of the Seneca County Court of Common Pleas, Probate Division, which denied his motion for an order authorizing the sale of real property in the estate of Stella R. Stockmaster. For the reasons that follow, we affirm.

{¶2} This appeal involves a motion filed by Harold acting in his individual capacity as a legatee under the Last Will and Testament of Stella R. Stockmaster. The facts are largely not in dispute and are stated as follows. Stella R. Stockmaster had four children: Harold Stockmaster, Appellee Francis Stockmaster, Appellee Virginia Ruffing, and Appellee Dorothy Hossler (now deceased and represented as the Estate of Dorothy Hossler). None of the appellees filed response briefs in this appeal. On November 2, 1993, Stella R. Stockmaster executed her Last Will and Testament (hereinafter the "will"). She later died on November 20, 2006. At the time of her death, Stella owned an undivided one-half interest in three adjoining parcels of real property in Seneca County, Ohio. These parcels of real property included a 38.962 acre parcel, a 71.5 acre parcel, and an 81.5 acre parcel.

{¶3} Prior to Stella's death, Harold owned the other undivided one-half interest in the 38.962 acre parcel and the 71.5 acre parcel, and had farmed these parcels of real property most of his adult life. The other undivided one-half

interest in the 81.5 acre parcel was jointly owned by Harold, Francis Stockmaster, Virginia Ruffing, and Dorothy Hossler.

{¶4} On April 17, 2007, Stella's will was admitted to the Seneca County Probate Court in Case No. 20071114. On that same day, according to the terms of Stella's will, Dorothy Hossler and Harold were appointed by the court as co-executors of the Stella R. Stockmaster Estate.

{¶5} In addition, under Article V, Stella provided Harold with an option to purchase her one-half interest in "any integral farm unit." In particular, Article V stated as follows:

> **Article V: All the rest and remainder of any interest in any farm real estate I give to my children, Dorothy A. Hossler, Virginia R. Ruffing, Francis H. Stockmaster, share and share alike, per stirpes; Provided, however, my son Harold J. Stockmaster may purchase this and any other farm real estate at the appraised price as accepted by the Probate Court of my estate. He shall have thirty (30) days after the appraisal is approved by the Probate Court to elect to purchase any integral farm unit, i.e., my estate interest in the Fritz Farm, the Eight-one (81) acre home place, or the Sixty (60) acre parcel of land to the North of the home place, with the payment for the other children's share to be made in full within sixty (60) days after the election to purchase. The election to purchase must be in writing delivered to both executors and closing completed within sixty (60) days of the time of election as set forth above, or the right to purchase shall lapse.**

{¶6} The appraisal and inventory of the property were approved by the court on November 16, 2007. On that same day, Harold presented his written

offer to purchase the 38.962 acre parcel and the 71.5 acre parcel pursuant to the option. Harold's offer to purchase was accepted by Dorothy Hossler and Harold Stockmaster, co-executors of the Stella R. Stockmaster Estate, on that same day as well.

{¶7} Thereafter, it was discovered that a barn from the 81.5 parcel was encroaching onto the 71.5 parcel. In response, Harold executed an addendum to his offer to purchase, which included additional acres of land that were a part of the 81.5 acre parcel. Dorothy Hossler, Dorothy's husband, and Virginia Ruffing all signed the addendum on November 26, 2007. Francis Stockmaster and his wife, Veronica Stockmaster, did not sign the addendum.

{¶8} Procedurally, nothing else happened until Dorothy A. Hossler's death on or about September 4, 2009, when, as a result of Dorothy's death, on December 4, 2009, Harold was appointed the sole fiduciary/executor of the Stella R. Stockmaster Estate.

{¶9} Thereafter, on June 3, 2010, Harold filed a motion for an order authorizing the sale of real property in the Estate of Stella R. Stockmaster. On August 24, 2010, Francis Stockmaster filed a motion in opposition to Harold's motion.

{¶10} On August 26, 2010, a hearing concerning Harold's motion was held. Consequently, on October 5, 2010, the trial court issued its decision denying

Harold's motion and finding that the option to purchase real estate contained in Article V of Stella's will had lapsed.

{¶11} Harold now appeals and raises three assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE PROBATE COURT FAILED TO PROPERLY INTERPRET AND FURTHER THE INTENTION OF STELLA STOCKMASTER AS EXPRESSED IN HER WILL.**

{¶12} In his first assignment of error, Harold argues that the trial court failed to properly interpret and carry out Stella R. Stockmaster's intention as expressed in her will.

{¶13} It is well settled that the construction of a will is a question of law, and thus, we will apply a de novo standard of review. *Woolley v. Woolley* (2010), 190 Ohio App.3d 18, 2010-Ohio-4177, 940 N.E.2d 620, ¶17, citing *Dunkel v. Hilyard* (2001), 146 Ohio App.3d 414, 418, 766 N.E.2d 603, citing *McCulloch v. Yost* (1947), 148 Ohio St. 675, 677, 76 N.E.2d 707. The most fundamental tenet for the construction of a will mandates that the court ascertain and carry out, within the bounds of the law, the intent of the testator. *Woolley*, 2010-Ohio-4177, at ¶17, citing *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706. Such intention must be ascertained from the words contained in the will. *Oliver v. Bank One, Dayton, N.A.* (1991), 60 Ohio St.3d 32, 34, 573 N.E.2d 55. "These words, 'if technical, must be taken in their technical sense, and if not technical, in

their ordinary sense, unless it appear[s] from the context that they were used by the testator in some secondary sense.'" *Polen v. Baker* (2001), 92 Ohio St.3d 563, 565, 752 N.E.2d 258, quoting *Townsend's Exrs. v. Townsend* (1874), 25 Ohio St. 477, paragraph three of the syllabus.

{¶14} If the language of the will is clear and unambiguous, the testator's intent must be ascertained from the express terms of the will itself. *Domo*, 66 Ohio St.3d at 314. The court may consider extrinsic evidence to determine the testator's intent only when the language used in the will creates doubt as to the meaning of the will. *Oliver*, 60 Ohio St.3d at 34.

{¶15} Here, the issue on appeal concerns determining Stella R. Stockmaster's intention as it relates to the option provision in her will. The language pertaining to Harold's option was stated in Article V of the will, and in pertinent part, provided:

> **[Harold] shall have thirty (30) days after the appraisal is approved by the Probate Court to elect to purchase any integral farm unit, * * * with the payment for the other children's share to be made in full within sixty (60) days after the election to purchase. The election to purchase must be in writing delivered to both executors *and closing completed within sixty (60) days of the time of election as set forth above, or the right to purchase shall lapse.***

(Emphasis added).

**{¶16}** After reviewing the four corners of Stella's will, we find that the language contained in the option provision is plain and unambiguous, and that it demonstrates a clear intention on the part of the testator. Article V clearly articulates that Stella's intent was to have this real estate option process start and end within a specific amount of time, and that if the transaction did not close by the end of that time then Harold's right to purchase the property under the will expired. As the provision explicitly stated, closing had to be completed within sixty days of the time of the election "or the right to purchase shall lapse."

**{¶17}** Harold tries to claim that the sixty day time provision was not a strict time requirement but rather "evidenced [Stella's] assumption that Appellant would obtain some sort of financing" so he could close the transaction. (Appellant's Brief at page 8). We find no merit to this argument. In addition to the option language in Article V, the language contained in the option provision clearly provides "[a]ll the rest and remainder of any interest in any farm real estate I give to my children, Dorothy A. Hossler, Virginia R. Ruffing, Francis H. Stockmaster, share and share alike, per stirpes"; provided Harold did not follow through with the option. Therefore, we conclude that it was Stella's intention that in the event that Harold failed to close on the property within sixty days, Harold's right to purchase Stella's undivided one-half interest in the land would cease, and Stella's

undivided one-half interest in the property would pass to Francis, Virginia, and Dorothy under the first sentence of Article V.

{¶18} While it is clear that Harold timely presented his intention to exercise the option provided in Article V of Stella's will for the 71.5 acre parcel and the 38.962 acre parcel, the record indicates that Harold failed to make payment to his other siblings and failed to close on the real estate property within sixty days from when he presented his offer to purchase. Accordingly, pursuant to the plain language of Stella's will, Harold's right to purchase the property lapsed. As a result, we find that the trial court did not err in denying Harold's motion to force a sale of the property under Stella's option provision since it is clear that his rights under the provision had already terminated.

{¶19} We note that in his first assignment of error, Harold also asserts that it was impossible for him to comply with the condition subsequent (which was to close within sixty days) due to an encroachment and interference from his family. Harold argues that unlike conditions precedent, because it was impossible for him to have performed the condition subsequent, the trial court should have found the condition void and declared the devise discharged and free of the condition. However, we find that his arguments pertaining to conditions precedent, conditions subsequent, and impossibility, relate more to Harold's second

assignment of error, and as such, we will address those arguments in greater detail below.

{¶20} Harold's first assignment of error is, therefore, overruled.

**ASSIGNMENT OF ERROR NO. II**

**THE PROBATE COURT MISAPPLIED THE DOCTRINE OF DEVIATION AND THEREBY FRUSTRATED THE INTENT OF STELLA STOCKMASTER AS EXPRESSED IN HER WILL.**

{¶21} In his second assignment of error, Harold argues that the trial court misapplied the doctrine of deviation when it failed to use the doctrine to give effect to Stella Stockmaster's clear intention.

{¶22} The doctrine of deviation is a principle that allows variation from the term of a will or trust to avoid defeating the testator's original intent. In particular, the Ohio Supreme Court has stated that by using the doctrine a court can "'direct or permit a deviation from the terms of the trust where compliance is impossible or illegal, or where owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust." *Daloia v. Franciscan Health Systems of Cent. Ohio, Inc.* (1997), 79 Ohio St.3d 98, 106, 679 N.E.2d 1084, quoting Scott, Law of Trusts, at 323, Section 381. However, in applying the doctrine of deviation, the court cannot change the original objective of the testator;

rather, the doctrine is only used for the purpose of giving effect to the testator's intention. Id.

{¶23} Here, Harold did not specifically raise the doctrine of deviation below; however, Harold did argue that due to an encroachment on the 71.5 acre parcel and interference from his brother, Francis, and his brother's wife, it was impossible for him to close within sixty days, and thus he was unable to comply with the condition subsequent. On appeal, Harold argues that unlike conditions precedent, because it was impossible for him to have performed the condition subsequent, the trial court should have found the condition void and declared the devise discharged and free of the condition. Moreover, he asserts that there is nothing in the will that would suggest that Stella intended or even contemplated a lack of cooperation on the part of her children nor the presence of an encumbrance on one of the parcels of land contained in the option provision.

{¶24} The trial court did consider Harold's argument that it had been impossible to comply with the terms of Stella's will. Nevertheless, the trial court ultimately rejected Harold's argument finding that Harold had failed to present any evidence of a legal impediment preventing the transfer of the 71.5 acre parcel and the 38.962 acre parcel. (Oct. 5, 2010 JE at 7-8). Rather, the trial court found that the only evidence presented was that Harold had been unable to obtain the financing he wanted from the lending institution he wanted at the time he

exercised his option. (Id.). The trial court went on to reason that it could have been possible for Harold to close within the sixty day time period since Harold was able to provide the necessary funds now that he was working through a different lender. (Id.).

{¶25} There are two kinds of conditions: conditions precedent and conditions subsequent. A condition precedent is a condition that when it happens an estate will vest, and a condition subsequent is a condition that defeats an estate already vested. *Megery v. Selymes* (1968), 14 Ohio App.2d 28, 31-32, 235 N.E.2d 725. Conditions that involve a devise of real estate that are also impossible to perform are treated differently depending on whether the condition is a condition precedent or a condition subsequent. Where a devise of real property is subject to a condition precedent, which is or becomes impossible of performance, typically the real property will pass under the residuary clause or as intestate estate. *Morley v. Calhoun* (1905), 18 Ohio C.D. 163. However, "'when a condition subsequent was impossible at the time of the execution of the will or at the testator's death, or when it becomes impossible after the testator's death, the condition is void and the devisee or legatee takes the bequest or devise discharged and free of the condition.'" *Megery*, 14 Ohio App.2d at 32, quoting 56 Ohio Jurisprudence 2d 252, Wills, Section 741.

**{¶26}** Nevertheless, despite Harold's arguments to the contrary, we do not believe that it is necessary to discuss the nature of any alleged conditions contained in the will because we do not believe that the trial court abused its discretion in finding that Harold failed to demonstrate that performance of the option was impossible.

**{¶27}** It is hard to determine from the record exactly why Harold could not close within sixty days of him presenting his written offer. There was some evidence that an encumbrance was discovered on the 71.5 acre parcel, and that this encumbrance had prevented Harold from obtaining financing. Also, there was some evidence that his brother, Francis, and his brother's wife had prevented him from following through with purchase by not signing Harold's addendum to his offer to purchase. However, all that is in the record are these general assertions. None of these issues were clearly presented in way of testimony or documentary evidence at the hearing nor was there any explanation as to why these issues were no longer rendering the sale impossible. For example, despite the passage of three years, the encumbrance still existed, Francis and his wife still refused to agree to any purchase of real estate from the 81.5 acre parcel, yet again, for some not clearly articulated reason, Harold was now able to follow through with the purchase of the two parcels. All we can tell from the testimony and evidence is that Harold was now going through a different lender and had accepted the fact

that he would have to purchase the property despite the encumbrance on the 71.5 acre parcel. Given the fact that the reasons for why Harold claims the option provision was "impossible" to perform still existed at the time he filed his motion, the fact that despite the presence of these problems, Harold was now (three years later) able to follow through with the purchase, and the lack of clearly articulated evidence demonstrating just how those problems rendered the option provision impossible, we find that the trial court's decision was not an abuse of discretion.

{¶28} Harold's second assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. III

**THE PROBATE COURT UNFAIRLY APPLIED THE DOCTRINES OF LACHES AND ESTOPPEL.**

{¶29} In his last assignment of error, Harold argues that the trial court unfairly applied the doctrines of laches and estoppel when there was evidence in the record that demonstrated that there were "ongoing and continuous efforts to close the transaction during the entire 3-year period."

{¶30} However, again we note that Harold did not specifically raise these doctrines below. Instead, Harold only implied in his motion that, as a result of the interference with his family and the discovery of the encroachment, the trial court should toll or stay the sixty day time limit. In considering Harold's argument to toll or stay the sixty day time period, the trial court found as follows:

> **Harold Stockmaster implies in his motion that negligence with his siblings, subsequent to the discovery of the encroachment, tolls the 60 day closing time period articulated in the Option. Stella R. Stockmaster died on November 20, 2006. The time, within which the closing for a real estate transaction contemplated by the Option, expired nearly three (3) years ago. To date, no motion has been filed with this Court to toll the running of any option period or closing date. No evidence is before the Court indicating any fiduciary appointed in this Estate agreed to the tolling of the 60 day time period. The Court therefore finds the 60 day time period to close articulated in the Option was not stayed or tolled.**

(Oct. 5, 2010 JE at 8).

**{¶31}** After reviewing the record, we find the trial court's decision was reasonable given the facts of this case. Again, not only did Harold fail to clearly articulate why the trial court should toll or stay the sixty day time period, but contrary to Harold's arguments, the record is completely void of any documents demonstrating "ongoing and continuous efforts to close the transaction during the entire 3-year period." After drafting the addendum to his offer to purchase, which his other siblings signed on November 26, 2007, the only other document pertaining to the sale of the property pursuant to the option provision is Harold's motion for order authorizing the sale of real property filed on June 3, 2010 – almost three years after the expiration of the sixty day time period. While Harold may claim that during these three years he had been attempting to resolve the problems and move forward with his right to purchase property under the option in

Stella Stockmaster's will, the fact of the matter remains that Harold did nothing in his individual, nor in his co-executor, capacity to toll the running of the sixty day option period.

{¶32} Overall, as we stated above, the will is unambiguous and shows a clear intent on the part of Stella R. Stockmaster that Harold had sixty days after he presented his offer to purchase to make payment to his other siblings and close on the property. Not only did Harold fail to do so, but Harold failed to adequately demonstrate how performance of the option had been impossible or why the sixty day time period should have been stayed or tolled. Consequently, we find that the trial court did not err in finding that Harold's right to purchase the property under the option had lapsed, and also did not err in denying Harold's motion to force a sale of the real property.

{¶33} Harold's third assignment of error is, therefore, overruled.

{¶34} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**ROGERS, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**

- 15 -